Argued and submitted November 3, 1998, decision of Court of Appeals affirmed, judgment of circuit court reversed, and case remanded to circuit court for resentencing March 9, 2000

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DARYL WAYNE LANGDON,
*Petitioner on Review.*

(CC 95-04-32422; CA A94048; SC S44978)

999 P2d 1127

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Sally L. Avera, Public Defender. With him on the brief was David E. Groom, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the response and brief for respondent on review. With him on the response and brief were Hardy Myers, Attorney General and Michael D. Reynolds, Solicitor General, Salem.

Before, Carson, Chief Justice, and Gillette, Van Hoomissen, and Durham, Justices.**

** Kulongoski, Leeson, and Riggs, JJ., did not participate in the consideration or decision of this case.

CARSON, C. J.

## CARSON, C. J.

The issue in this criminal case is whether consecutive sentences imposed under Ballot Measure 11, adopted by the people in 1994, Or Laws 1995, ch 2, § 1, are subject to the limitation on incarceration terms prescribed by the Oregon Felony Sentencing Guidelines (sentencing guidelines).[1] The Court of Appeals concluded that Measure 11 sentences are not subject to those limitations. *State v. Langdon,* 151 Or App 640, 950 P2d 410 (1997). For the reasons that follow, we agree. We therefore affirm the decision of the Court of Appeals.

## I. INTRODUCTION

We begin by reviewing the statutes upon which defendant relies.

### A. *Felony Sentencing Guidelines*

In 1985, the legislature created the Oregon Criminal Justice Council (Council) to develop a series of sentencing guidelines.[2] Or Laws 1985, ch 558, § 2. The Council developed the Felony Sentencing Guidelines, which apply to most felonies and employ a grid system that prescribes presumptive sentences based upon the seriousness of the current crime (the vertical axis) and the offender's criminal history (the horizontal axis). OAR 213-004-0001. The intersection of the two axes establishes the presumptive sentence for the offense. OAR 213-003-0001(16). The sentencing court may depart upward or downward from that presumptive sentence, based upon aggravating or mitigating factors. OAR 213-008-0001. Although the sentencing guidelines were created as administrative rules, the legislature approved them in 1989, giving them the authority of statutory law. Or Laws 1989, ch 790, § 87.

---

[1] Measure 11 now is codified as ORS 137.700. Although the legislature amended Measure 11 in June of 1995, Or Laws 1995, ch 421, § 1; Or Laws 1995, ch 422, § 47, we apply the version in effect on April 16, 1995, the date of defendant's crime.

[2] The legislature later restructured the Council and renamed it the Oregon Criminal Justice Commission. Or Laws 1995, ch 420, § 1.

In addition to establishing a system of presumptive and departure sentences, the sentencing guidelines also impose two limitations upon incarceration terms when multiple sentences are imposed consecutively. Those limitations often are referred to as the "200-percent rule" and the "400-percent rule." The 200-percent rule, set out in OAR 213-012-0020(2)(b), applies to presumptive sentences that are being imposed consecutively and states that

> "[t]he total incarceration term of the consecutive sentences, including the incarceration term for the primary offense, shall not exceed twice the maximum presumptive incarceration term * * * of the primary sentence except by departure as provided by [the 400-percent rule]."

The "primary offense" is the offense with the highest crime-seriousness ranking under the guidelines. OAR 213-003-0001(17). Thus, under the 200-percent rule, "no matter how many convictions arise out of a single case, if any of the sentences are imposed to run consecutively, the total incarceration term for all of the convictions combined may not exceed twice the maximum presumptive incarceration term for the primary offense, except by departure." *State v. Davis*, 315 Or 484, 492, 847 P2d 834 (1993).

The 400-percent rule is set out in OAR 213-008-0007(3) and applies when the consecutive sentences that are being imposed are not solely presumptive sentences but, instead, include one or more departure sentences. The 400-percent rule states:

> "When a departure sentence is imposed for any individual offense sentenced consecutively, the incarceration term of that departure sentence shall not exceed twice the maximum incarceration term that may be imposed for that offense as provided in [the 200-percent rule]. * * *"

In *Davis*, 315 Or at 493, this court explained the operation of the 400-percent rule:

> "First, the sentencing judge must calculate the presumptive incarceration term for each conviction without departure, applying [the 200-percent rule]. These presumptive incarceration terms are limited by the 200 percent rule, *i.e.*, they cannot exceed 200 percent of the presumptive incarceration term for the primary offense. After calculating

those terms, the judge may impose a departure sentence on any or all of the individual convictions. Under [the 400-percent rule], however, the incarceration term of each departure sentence may not exceed twice the presumptive incarceration term already determined for that offense under [the 200-percent rule]. Because these presumptive incarceration terms will have been limited already by operation of the 200 percent rule, the maximum incarceration term that may be imposed for all the consecutive sentences together by departure cannot exceed four times the maximum presumptive incarceration term of the primary offense. * * *"

(Footnote omitted.)

Thus, the sentencing guidelines set out the following methodology for imposing consecutive departure sentences: The trial court initially must determine the presumptive sentence for each offense. In the process of determining those sentences, the trial court must, if it wishes to impose some sentences consecutively, apply the 200-percent rule to determine whether the total incarceration term exceeds twice the maximum presumptive sentence for the primary offense. If the incarceration term violates the 200-percent rule, then the trial court must adjust the sentences as necessary to bring the total incarceration term within the 200-percent limitation. We refer to presumptive sentences that the court has adjusted, if necessary, to comply with the 200-percent rule as "adjusted presumptive sentences."

The court next must consider each adjusted presumptive sentence separately and determine whether a departure sentence is warranted. When determining departure sentences, the trial court must apply the 400-percent rule, reviewing each departure sentence separately to ensure that it does not exceed twice the adjusted presumptive sentence for that offense under the calculations made earlier under the 200-percent rule.

B. *Measure 11*

Measure 11 prescribes mandatory minimum sentences for certain felony offenses. Subsection (1) of Measure 11 provides, in part:

"When a person is convicted of one of the offenses listed in subsection (2) of this section and the offense was committed on or after April 1, 1995, the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection 2 [*sic*]. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in the sentence for any reason whatsoever under ORS 421.120, 421.121[3] or any other statute. The court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in Section 2 [*sic*]. * * *"

Or Laws 1995, ch 2, § 1. Thus, Measure 11 expressly states that its minimum sentences may not be reduced for any reason.

## II. FACTS

Defendant was convicted of and sentenced for two counts of first-degree kidnapping, ORS 163.235 (counts one and two); one count of first-degree unlawful sexual penetration, ORS 163.411 (count three); two counts of attempted first-degree sodomy, ORS 163.405 (counts four and five); one count of first-degree sexual abuse, ORS 163.427 (count six); and one count of fourth-degree assault, ORS 163.160 (count seven). Defendant's convictions on counts one through six were subject to sentencing under the sentencing guidelines. Defendant's convictions on counts one, two, three, and six also were subject to mandatory minimum sentences under Measure 11. Defendant's conviction on count seven was not subject to the sentencing guidelines or Measure 11 and is not at issue on review.

Under ORS 137.637, when a statute mandates a sentence of imprisonment, the trial court must impose that mandatory sentence or the sentence prescribed under the sentencing guidelines, whichever is longer.[4] For each of

---

[4] ORS 421.120 and ORS 421.121 allow for reductions in prison terms for good behavior and are not relevant to the issue in this case.

[1] ORS 137.637 provides:

"When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the

defendant's convictions to which Measure 11 applied, the Measure 11 sentence was longer than the corresponding sentence under the guidelines. The trial court imposed Measure 11 sentences of 90 months each on counts one and two, 100 months on count three, and 75 months on count six. The court then imposed a presumptive, 17-month sentence on each of counts four and five under the sentencing guidelines. The court ordered the sentences on counts one, three, five, and six to be served consecutively, and the sentences on counts two, four, and seven to be served concurrently. Defendant's total incarceration term was 282 months, 265 of which were attributable to Measure 11 sentences.

Defendant appealed, arguing that the trial court erred in ordering that his sentences on counts two, three, five, and six be served consecutively, because the resulting 282-month sentence violated both the 200-percent and 400-percent rules. The Court of Appeals began its analysis by observing that the 200-percent rule applies only to presumptive sentences and the 400-percent rule applies only to departure sentences. The court then concluded that Measure 11 sentences were neither presumptive sentences nor departure sentences and, accordingly, were not subject to either the 200-percent or the 400-percent rule. *Langdon*, 151 Or App at 646-47.

Although the Court of Appeals rejected defendant's argument that the 200-percent and 400-percent rules apply to Measure 11 sentences, the court held that the trial court had violated the 200-percent rule by ordering that defendant's 17-month sentence, imposed under the sentencing guidelines, be served consecutively to his Measure 11 sentences. Because the 200-percent rule imposed a limit of 120 months on defendant's consecutive sentences, and defendant's Measure 11 sentences alone amounted to 265 months, the Court of Appeals concluded that the trial court's consecutive imposition of the 17-month sentence violated the 200-percent rule. *Id.* at 648. According to the Court of Appeals, although the 200-percent rule does not limit the incarceration term of consecutive sentences under Measure

sentence as provided by the rules of the Oregon Criminal Justice Commission, whichever is longer."

11, a sentencing court must include the term imposed under Measure 11 in its calculations when determining whether sentences imposed under the sentencing guidelines violate the 200-percent rule.[5] *Id.* at 647. The court remanded for resentencing, instructing that the incarceration term could not exceed the term of 265 months required under Measure 11. *Id.* at 648.

## III. DISCUSSION

On review, defendant again argues that the trial court lacked the authority to impose his Measure 11 sentences consecutively because his total incarceration term exceeded that permitted by the 400-percent rule. He argues that the 400-percent rule applies to Measure 11 because Measure 11 sentences are—in his view—"departure" sentences. Defendant observes that the 400-percent rule applies to all "departure" sentences, which the sentencing guidelines define as sentences that are "inconsistent with the presumptive sentence for an offender." OAR 213-003-0001(5). Defendant argues that Measure 11 sentences are inconsistent with presumptive sentences because Measure 11 and the presumptive sentencing system always will prescribe sentences of different durations. That being the case, defendant continues, Measure 11 sentences must be departure sentences and, therefore, are subject to the 400-percent rule.

The state responds that Measure 11 sentences are not departure sentences and, alternatively, that, even if they are, Measure 11 sentences are not subject to the 400-percent rule because Measure 11 expressly forbids a reduction of its minimum sentences. It follows, the state argues, that, if defendant's characterization of Measure 11 sentences as departure sentences is correct, then Measure 11 would conflict irreconcilably with the 400-percent rule. If that is the case, the state concludes, then Measure 11, as the later-enacted statutory provision, amended the sentencing guidelines by implication and, therefore, controls the outcome in this case.

Defendant concedes that Measure 11 would not be subject to the 400-percent rule if a conflict exists between the

---

[5] That part of the Court of Appeals' decision is not before us on review.

two sentencing schemes because, "[i]f such were the case, the provision enacted last in time—Measure 11—would impliedly amend the first-in-time provision—the 400 percent rule." However, according to defendant, no conflict exists between Measure 11 and the 400-percent rule, because a trial court is authorized to comply with the 400-percent rule by imposing Measure 11 sentences concurrently. He points out that Measure 11 does not address whether its mandatory sentences may be imposed concurrently or consecutively. Defendant argues:

> "* * * Measure 11 is completely silent about consecutive sentences. Its text only addresses individual prison sentences for individual crimes, by requiring that minimum prison sentences be imposed and served. * * *
>
> "* * * * *
>
> "Measure 11 and the 400 percent rule can be harmonized to say that[,] if imposing a Measure 11 sentence consecutively would violate the 400 percent rule, the Measure 11 sentence still must be imposed and served. It is just that it must be imposed and served as a *concurrent* sentence. * * *"

(Emphasis in original.) Thus, the necessary premise for defendant's argument that Measure 11 does not conflict with the 400-percent rule is that, as a matter of mechanics, when consecutively imposed Measure 11 sentences result in an excessive incarceration term, a trial court must adjust the length of that term by changing the offending sentence so that it runs concurrently. Under defendant's view, if a trial court intends to impose multiple departure sentences consecutively, then it must consider the *total* incarceration term that would result. If that term exceeds 400 percent of the primary offense, then, according to defendant, the court must reduce the total incarceration term by imposing one or more of the departure sentences concurrently.

■      To determine how the 400-percent rule operates with respect to Measure 11 sentences, we apply the familiar methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Our first level analysis is to examine both the text and context of the statute. *Id.* at 610. Context includes other provisions of the same statute

and other related statutes. If the legislature's intent is clear from that inquiry into text and context, then further inquiry is unnecessary. *Id.* at 611. Here the inquiry is whether the 400-percent rule and Measure 11 can coexist. The state argues that they cannot and, therefore, Measure 11 impliedly amended the 400-percent rule. We turn to that inquiry.

■ ■ To determine whether Measure 11 impliedly amended the 400-percent rule, we must determine whether there is an irreconcilable conflict between the statute and the rule. "[W]hen the legislature enacts a subsequent statute which is repugnant to or in conflict with a prior statute, but contains no language expressly repealing the prior statute, the prior statute is impliedly repealed." *State v. Shumway,* 291 Or 153, 160, 630 P2d 796 (1981). Repeal by implication is not favored and must be established by "plain, unavoidable, and irreconcilable repugnancy." *Id.* at 162 (internal quotation marks omitted).

■ As discussed, the 400-percent rule states:

> "When a departure sentence is imposed for any individual offense sentenced consecutively, the incarceration term of that departure sentence shall not exceed twice the maximum incarceration term that may be imposed for that offense as provided in [the 200-percent rule]. * * *"

OAR 213-008-0007(3). That rule makes no reference to the total incarceration term of all departure sentences imposed consecutively. Instead, from its references to a departure sentence in the singular, *i.e.,* "*a* departure sentence," "*that* departure sentence," and "the maximum incarceration term that may be imposed *for that offense,*" it is clear that the limitation imposed by the rule applies separately to the incarceration term of *each* departure sentence. In other words, the 400-percent rule does not limit the total incarceration term that a trial court may impose by sentencing consecutively but, instead, limits how far a trial court can depart from *each* adjusted presumptive sentence prescribed by the 200-percent rule.

■ The foregoing is an important distinction between the limit imposed by the 400-percent rule and the limit imposed by the 200-percent rule, which limits the *total*

*incarceration term* when the court imposes multiple sentences consecutively.[6] In arguing that the 400-percent rule imposes a limit on the total incarceration term, defendant fails to recognize that distinction.[7] The fact that a trial court must evaluate each departure sentence separately under the 400-percent rule is significant—and demonstrates why defendant's argument must fail—because it leaves a trial court with only one method to make an excessive departure sentence comply with the rule: By reducing the length of the excessive departure sentence. That is so, because a court cannot reduce a departure sentence that more than doubles the adjusted presumptive sentence for that offense by changing that sentence so that it runs concurrently.

A simple hypothetical example demonstrates this point. Suppose that a trial court sentences a defendant to serve several consecutive sentences and that the adjusted presumptive sentence for one of those offenses under the 200-percent rule is 25 months. Suppose further that the trial court imposes a departure sentence of 60 months for that offense. That departure sentence would violate the 400-percent rule, because 60 months is more than twice the adjusted presumptive sentence of 25 months. If, consistent with defendant's argument, the trial court attempted to "adjust" that 60-month departure sentence by changing it to run concurrently with another sentence, then the length of that incarceration term still would exceed twice the 25-month adjusted presumptive sentence.[8] Thus, the only way

---

[6] Simply because the 200-percent rule limits the total incarceration term of consecutive sentences does not, by itself, establish that any adjustment under the 200-percent rule must be made by changing consecutive sentences so that they run concurrently, as the Court of Appeals has concluded. *Langdon*, 151 Or App at 647. However, that part of the Court of Appeals' decision is not before us on review.

[7] To some extent, it is understandable that defendant mistakenly believes that the 400-percent rule imposes a limit on the total incarceration term, because the shorthand title "400-percent rule" itself is misleading. That shorthand title suggests that the rule operates to ensure that the total incarceration term never exceeds 400 percent of the primary offense. Although it is true that the 400-percent rule has that practical effect, that is so only because the rule operates in reference to presumptive sentences that the court already has adjusted under the 200-percent rule. Because the rule prevents trial courts from more than doubling each of those adjusted presumptive sentences, as a matter of arithmetic, the rule never will allow a total incarceration term that exceeds 400 percent of the primary offense. *See Davis*, 315 Or at 493 (discussing mechanics of the 200-percent and 400-percent rules).

[8] Even if the trial court in our hypothetical example originally had not imposed the sentence consecutively, by more than doubling a presumptive sentence, the

that the trial court could modify that 60-month sentence to make it less than twice the 25-month adjusted presumptive sentence would be to reduce the length of *that departure sentence* so that it is not longer than 50 months.

We have considered the context of the 400-percent rule, but find nothing in the context that casts doubt on our reading of the rule. Thus, we conclude that the 400-percent rule requires trial courts to modify each departure sentence that violates the rule by reducing the length of that sentence, not by changing its consecutive status. We now turn to the text of Measure 11.

■     As discussed, Measure 11 provides, in part:

"When a person is convicted of one of the offenses listed in subsection (2) of this section and the offense was committed on or after April 1, 1995, the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection 2 [*sic*]. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in the sentence for any reason whatsoever * * *. The court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in Section 2 [*sic*]. * * *"

Or Laws 1995, ch 2, § 1. In three separate instances, Measure 11 addresses the subject of the reduction of its minimum sentences. First, it states that "the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection 2 [*sic*]." Second, it states that a prisoner "is not eligible for any reduction in the sentence for any reason whatsoever * * *." Finally, Measure 11 states that "[t]he court may impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in Section 2 [*sic*]." Those provisions demonstrate that Measure 11 prohibits any reduction of its sentences.

---

departure sentence would violate OAR 213-008-0003(2), which mirrors the limit in the 400-percent rule, but applies to any departure sentence imposed concurrently or as a single sentence. OAR 213-008-0003(2) provides that "[a] durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term."

## IV.   CONCLUSION

We have concluded that the 400-percent rule requires a trial court to reduce the length of sentences that violate its limitation. We also have concluded that Measure 11 prohibits the reduction of its sentences in any respect. Read together, those conclusions demonstrate that, even if we were to accept defendant's argument that Measure 11 sentences are departure sentences, Measure 11 and the 400-percent rule would conflict irreconcilably. In such a case, Measure 11, as the statute enacted later in time, would impliedly amend the 400-percent rule. Therefore, we conclude that the 400-percent rule does not limit Measure 11 sentences. Accordingly, we reject defendant's argument that the trial court in this case lacked the authority to impose defendant's Measure 11 sentences consecutively.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for resentencing.