Argued and submitted September 29, 2000, convictions affirmed; sentences vacated and remanded for resentencing June 27, petition for review denied November 7, 2001 (332 Or 656)

STATE OF OREGON,
*Respondent,*

*v.*

DUANE ROLLAND LONGENECKER,
*Appellant.*

97010090; A101347

27 P3d 509

James N. Varner argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Ceniceros, Senior Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant appeals a judgment of conviction for kidnapping, attempted murder, rape, sodomy, unlawful sexual penetration, and assault. He assigns error to his sentence based on ORS 137.700 (1995) and the sentencing guidelines, OAR 213-04-001 *et seq.* (1996). We vacate the sentence and remand for resentencing.

We state the facts in the light most favorable to the state. Just before midnight on January 15, 1997, defendant and two companions encountered D.F. outside a convenience store in Albany. One of the companions, Kathy, was an acquaintance of D.F., and defendant had met D.F. a few weeks before at a tavern. Kathy, her boyfriend, and defendant were seated in a car, and Kathy offered D.F. a ride back to the apartment where D.F. was staying, which she accepted. Defendant drove Kathy and her boyfriend home first. He then drove D.F. to his apartment, which was located within a block of the apartment where D.F. was staying, for the ostensible purpose of showing her his new apartment.

D.F. had a drink at defendant's apartment and then decided to walk home. As she got up to leave, she saw a man come downstairs with a bag. She was then knocked unconscious. When she regained consciousness, she found that she was tied to a bed, naked, and defendant was hitting her on the head and face with a small, wooden bat-like object that appears to have been a rolling pin. Throughout the night, defendant continued to abuse D.F. in various ways, including raping her, sodomizing her, threatening to kill and mutilate her with a knife, and attempting to strangle her with his hands. Defendant's friend, Toni, assisted defendant in some of the crimes. Toni released D.F. some time the next morning.

After a jury trial, defendant was convicted of attempted murder, ORS 163.115, ORS 161.405; four counts of kidnapping, ORS 163.235; assault in the second degree, ORS 163.175; rape in the first degree, ORS 163.375; sodomy in the first degree, ORS 163.405; and two counts of unlawful sexual penetration in the first degree, ORS 163.411. The trial court determined that all of the kidnapping counts should merge for sentencing purposes. It then sentenced defendant,

using a combination of the sentencing guidelines, OAR 213-04-001 *et seq.* (1996), and Measure 11, ORS 137.700 (1995), to consecutive sentences for each crime. Cumulatively, defendant's sentence totaled 830 months.

On appeal, defendant makes several assignments of error. We write only to address his contention that his total sentence is greater than the applicable laws allow. We review the sentence for errors of law and conclude that defendant is correct that neither the sentencing guidelines nor Measure 11 authorizes a sentence of 830 months' duration. Accordingly, we remand for resentencing.

■ Although defendant did not object to his sentence at trial, he argues that the alleged error is an error of law that is apparent on the face of the record and that we should exercise our discretion to review it. ORAP 5.45(4)(b); *see also Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). We have previously held that a similar error in sentencing was an error of law apparent on the face of the record. *State v. Skelton*, 153 Or App 580, 593, 957 P2d 585, *rev den* 327 Or 448 (1998). We conclude that our plain error analysis in *Skelton* applies to this case and that we therefore have discretion to review the error alleged here. The next question is whether we should exercise our discretion.

In *Skelton*, we exercised our discretion to review the sentencing error because we concluded that review could be accomplished with a minimum expenditure of judicial time and resources and because our correction of the error would have a significant effect on the defendant's sentence. *Id.* In this case, although our review can be accomplished as expeditiously as our review in *Skelton*, the benefits to defendant are less obvious, because even a corrected sentence will most likely result in defendant's imprisonment for the rest of his life. Nonetheless, we choose to exercise our discretion to review the error alleged here.[1] There is a difference of 15 years between the sentence imposed by the trial court and

---

[1] In doing so, we note that this case is unlike *State v. Quintero*, 160 Or App 614, 620-21, 982 P2d 543 (1999), in which we declined to exercise our discretion to review a similar error because the defendant had received significant concessions from the trial court in exchange for a stipulation, the effects of which he challenged on appeal.

that authorized by law, and it is possible that defendant will be eligible for release during his lifetime if he receives the maximum sentence authorized by law, whereas he will surely die in prison under the existing sentence. Whatever their practical consequence, we think those differences are of sufficient magnitude to justify our exercise of discretion.

Although the state argues that we should decline to exercise our discretion because defendant failed to petition the trial court under ORS 138.083 to correct the error, we are not persuaded by the state's argument. We have granted review in spite of such failures in the past. *See, e.g., State v. Rood,* 129 Or App 422, 425, 879 P2d 886 (1994). In *Rood,* we exercised our discretion to review a sentence in part because of the gravity of the trial court's error. In that case, as a result of a clerical error, the trial court had imposed an 18-month term of imprisonment instead of a 60-day term. *Id.* In this case, 15 years, rather than 16 months, are at stake. We think the error at issue is sufficiently grave to justify our review. Moreover, in this case, before sentencing, the trial court had already been advised of *State v. Langdon,* 151 Or App 640, 647, 950 P2d 410 (1997), *aff'd* 330 Or 72, 999 P2d 1127 (2000), the case in which we first explained the methodology for sentencing criminal defendants when both Measure 11 and the sentencing guidelines apply. Consequently, it is doubtful that the court would have been amenable to a petition to correct the sentence in light of *Langdon.* Therefore, based on the gravity of the error and the fact that the trial court had the salient case before it, we choose to exercise our discretion to review the error in spite of defendant's failure to pursue the statutory remedy under ORS 138.083.

In this case, all of defendant's convictions are for Measure 11 crimes. *See* ORS 137.700 (1995).[2] After stating

---

[2] The version of Measure 11 in effect when defendant committed his crimes provides, in part, that

"[w]hen a person is convicted of one of the offenses listed in subsection (2) of this section * * *, the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection (2) of this section. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in the sentence for any reason whatsoever under ORS 421.120, 421.121, or any other statute. The court may impose a greater sentence if otherwise authorized by law, but may not impose a lower sentence than the sentence specified in subsection (2) of this section."

that Measure 11 sentences are not governed by the guidelines, the trial court alternated between imposing mandatory minimum sentences under Measure 11 and sentencing guidelines sentences for each crime, depending on which law allowed a greater sentence for each offense. It first designated kidnapping as the primary offense for sentencing purposes under the guidelines. OAR 213-03-001(17) (1996). It then determined that defendant had a criminal history score that placed him in category C under the guidelines. OAR 213-04-007 (1996); OAR 213-04-008 (1996). Having concluded that the maximum presumptive sentencing for kidnapping under Category C was 115 months, the court imposed the maximum guidelines departure sentence of 230 months for kidnapping, which was greater than the mandatory minimum under Measure 11. OAR 213-08-003(2) (1996); ORS 137.700 (1995). Similarly, it imposed maximum guidelines departure sentences of 120 months for rape and sodomy after concluding that they were greater than the mandatory minimum sentences for those crimes under Measure 11. OAR 213-08-003(2) (1996); ORS 137.700 (1995). For the remaining crimes of sexual penetration, attempted murder, and assault, the court imposed mandatory minimum sentences under Measure 11 because those sentences were greater than the maximum departure sentences under the guidelines. OAR 213-08-003(2) (1996); ORS 137.700 (1995). Finally, it determined that all of the sentences should run consecutively to one another. The total sentence imposed was 830 months.

■  At the outset, we reject the trial court's broad statement that "Measure 11 sentences are not governed by the Sentencing Guidelines." As we recently observed, "ORS 137.700 work[s] in conjunction with—and not in place of—the sentenci..g guidelines." *State v. Sullivan*, 172 Or App 688, 691, 193 P3d 1001 (2001). We have outlined the methodology for sentencing a criminal defendant "when a trial court is imposing consecutive sentences in a case that involves Measure 11 offenses." *Skelton*, 153 Or App at 591; *see also Langdon*, 151 Or App at 647.

---

ORS 137.700(1) (1995). Subsection (2) of the statute lists numerous crimes and provides a minimum sentence for each. All of defendant's crimes are included in the list. *See* ORS 137.700(2) (1995).

"First, the court should determine the mandatory minimum sentence for the Measure 11 offenses. Next, it should determine the maximum term available for all of the felony offenses under the guidelines rules, using, as applicable, either the 200 or the 400 percent rule.[3] Once the court has determined the mandatory minimum sentence for the Measure 11 offenses and the sentencing guidelines maximum sentence, it can impose the actual sentence. If the guideline maximum is less than the mandatory minimum, the court must impose the mandatory minimum for the Measure 11 offenses and impose concurrent sentences on the others. If the guideline maximum is higher, the court has more discretion. In that case, the court must impose the mandatory minimum, but may impose guideline sentences up to the amount allowable under the 200 or 400 percent rule[4] * * *."

*Skelton*, 153 Or App at 591. Proceeding under the above methodology, we determine that, under Measure 11, the mandatory minimum consecutive sentence for all of defendant's offenses would be 650 months. ORS 137.700(2) (1995).[5]

---

[3] We note that treating the 200 and 400 percent rules as alternatives is slightly misleading. In fact, either the 200 percent rule is applied alone or *both* the 200 and the 400 percent rules are applied. *See State v. Langdon*, 330 Or 72, 82 n 7, 999 P2d 1127 (2000) ("[T]he [400 percent] rule operates in reference to presumptive sentences that the court has already adjusted under the 200 percent rule.").

[4] As the Supreme Court recently noted, the 400 percent rule, OAR 213-08-007(3) (1996), sets an upward limit on each individual sentence in a string of consecutive sentences rather than on the total sum of all the consecutive sentences. *Langdon*, 330 Or at 81. Nonetheless, because the 400 percent rule is applied after the sum of the consecutive sentences has already been reduced pursuant to the 200 percent rule, OAR 213-12-020(2)(b) (1996), the practical effect of the 400 percent rule, at least for crimes that are at the upper end of the crime seriousness scale, is that "the total incarceration term never exceeds 400 percent of the [presumptive sentence for] the primary offense." *Langdon*, 330 Or at 82 n 7. Here, as in many cases, we do not have the information needed to determine the effect of the 400 percent rule on the individual incarceration term for each offense, because we do not know how the trial court would have or did adjust those individual sentences under the 200 percent rule. Thus, in determining whether the trial court erred in imposing the sentence that it did, we necessarily rely on the overall practical effect of the 400 percent rule on defendant's total sentence, rather than on its actual effect on his sentence for each offense.

[5] The mandatory minimum sentences under Measure 11 for defendant's offenses are as follows: 90 months for kidnapping; 90 months for attempted murder; 70 months for assault in the second degree; and 100 months each for rape in the first degree, sodomy in the first degree, and unlawful sexual penetration in the first degree. ORS 137.700(2) (1995). (Defendant was convicted of two counts of unlawful sexual penetration.)

We now turn to the sentencing guidelines. As previously noted, the trial court designated kidnapping as the primary offense under the guidelines. For someone such as defendant who has a criminal history of category C, kidnapping carries a maximum presumptive sentence of 115 months. *See* Sentencing Guidelines Grid (1996). OAR 213-08-003(2) (1996) provides that "[a] durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term." Thus, the trial court was correct to conclude that the maximum guidelines sentence it could impose for kidnapping was 230 months.

When, as here, a trial court is imposing consecutive sentences, the presumptive sentence for crimes other than the primary offense that were part of the same criminal episode is the maximum sentence taken from column I in the sentencing grid; in other words, sentences for crimes other than the primary offense are calculated as though the defendant had no prior criminal history. OAR 213-12-020(2)(a) (1996). However, the total consecutive sentence is further limited by the requirement that the total incarceration term for all the consecutive sentences "cannot exceed twice the maximum presumptive incarceration term * * * of the primary offense except by departure as provided by OAR 213-08-007." OAR 213-12-020(2)(b) (1996).[6]

Under the guidelines framework, then, the presumptive sentences for defendant's remaining crimes are as follows: 18 months for assault in the second degree, 36 months for attempted murder, 60 months each for rape and sodomy, and 36 months for each of the two counts of unlawful sexual penetration.[7] OAR 213-12-020(2)(a) (1996); *see also*

---

[6] This rule has been denominated the "200 percent rule." A portion of the rule omitted from the above quotation allows departure sentences to be doubled in some instances, but that is allowed only when the crime seriousness category is between one and seven, whereas defendant's primary offense was a ten. OAR 213-12-020(2)(b) (1996); OAR 213-08-005(1) (1996). We therefore disregard that portion of the rule for purposes of this case.

[7] The trial court noted that aggravating factors were pled and proven with respect to the rape and sodomy convictions but not with respect to the two unlawful sexual penetration convictions. That fact resulted in rape and sodomy receiving higher crime seriousness designations than the unlawful sexual penetration counts. *See* OAR 213-04-002(2) (1996).

Sentencing Guidelines Grid (1996). Together with the kidnapping sentence of 230 months, the sentence would then total 476 months (assuming that all the crimes are sentenced consecutively and that no additional departures are taken at that level). However, because the maximum presumptive sentence for kidnapping is 115 months, the 200 percent rule requires that the total sentence not exceed twice that, or 230 months, unless a departure is imposed pursuant to OAR 213-08-007 (1996).[8] Therefore the trial court would have been required, under the 200 percent rule, to reduce each of the sentences by some proportion such that their sum would be 230 months. The record does not indicate what each of the sentences would have been after application of the 200 percent rule, but we know that each of them could have been subsequently increased pursuant to a departure under the 400 percent rule. OAR 213-08-007(3) (1996); *see also* 175 Or App at 39 n 4. The maximum increase that the 400 percent rule allows is a doubling of each of the sentences that was previously reduced under the 200 percent rule. Thus, assuming that each sentence is given the maximum possible departure, the 400 percent rule could potentially double the total sentence imposed under the 200 percent rule. Thus, defendant's maximum possible sentence under the guidelines would have been 460 months.

As stated above, the sentence that could be imposed under Measure 11 if all of the Measure 11 sentences were imposed consecutively is 650 months. Because the consecutive Measure 11 sentences that could be imposed exceed the maximum guidelines sentence that could be imposed, the court must sentence defendant to consecutive sentences solely under Measure 11 if it wishes to impose on defendant the maximum possible sentence, 650 months. If the sentence imposed by the court includes any sentence under the guidelines that is consecutive to any other sentence in this case, the maximum sentence that can be imposed on defendant is

---

[8] At the time that defendant committed his crimes, the 200 and 400 percent rules applied to consecutive sentences that were imposed for convictions involving a single criminal episode. *See, e.g., State v. Miller*, 317 Or 297, 302-06, 855 P2d 1093 (1993). The 200 and 400 percent rules were amended in 1997 to make them inapplicable to consecutive sentences that are imposed for crimes that have different victims. OAR 213-012-0020(5); OAR 213-008-0007.

460 months. Here, the court used a combination of Measure 11 sentences and guidelines sentences to impose a sentence of 830 months, which exceeded by 180 months the maximum sentence allowed by law.

The trial court erred in sentencing defendant without reference to the methodology employed in *Skelton* and prior cases. That error was an error of law apparent on the face of the record, and significant reasons support our decision to exercise our discretion to correct it. Accordingly, we vacate the sentence and remand for resentencing.

Convictions affirmed; sentences vacated and remanded for resentencing.