Argued and submitted May 31, affirmed October 31, 2001

STATE OF OREGON,
*Respondent,*

*v.*

LESTER CRAIN,
*Appellant.*

9804-33425; A108785

33 P3d 1050

Rankin Johnson IV, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, State Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Haselton and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendant appeals from his conviction for, among other crimes, rape in the first degree, ORS 163.375. His sole assignment of error on appeal is that, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution as applied in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), the trial court erred in sentencing him as a dangerous offender under ORS 161.725(1)(a)[1] based on facts not pleaded in the indictment or proved to the jury beyond a reasonable doubt. The state responds that defendant failed to preserve that claim of error and that, in any event, neither the Oregon nor the United States Constitution required that the state allege, or that the jury determine beyond a reasonable doubt, the facts support-ing defendant's dangerous offender sentence. We conclude that defendant failed to preserve his claimed error and, therefore, affirm.

In December 1997, defendant offered a ride to a woman waiting at a bus stop. The woman got into defen-dant's car. Defendant drove the woman to a deserted parking lot, asked her to fellate him and, after she refused, forcibly raped her.

Defendant was charged with rape in the first degree, kidnapping in the second degree, and attempted sodomy in the first degree. None of the counts in the indictment alleged

---

[1] ORS 161.725 provides, in part:

"(1) Subject to the provisions of ORS 161.737, the maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exist:

"(a) The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indi-cating a propensity toward crimes that seriously endanger the life or safety of another."

In *State v. Mitchell*, 84 Or App 452, 734 P2d 379, *rev den* 303 Or 590 (1987), this court held that the defendant was entitled under Article I, section 11, of the Oregon Constitution, to a jury determination whether he met a criterion for imposition of a dangerous offender sentence now set out in ORS 161.725(1)(b), namely, that the defendant is being sentenced for a felony that "seriously endangered the life or safety of another."

that defendant was "suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another," ORS 161.725(1)(a), or otherwise alleged that defendant was a dangerous offender subject to sentencing under ORS 161.725 to ORS 161.737. Defendant was convicted by a jury. After the jury returned its verdict, the court ordered an evaluation pursuant to ORS 161.735 to determine whether defendant is a dangerous offender; defendant did not object. At sentencing, the trial court found that defendant met the criteria in ORS 161.725(1)(a) for a dangerous offender and, on defendant's rape conviction, sentenced him to a maximum indeterminate term of 30 years' imprisonment, with a 100-month minimum. ORS 161.725(1); ORS 161.737.

On appeal, defendant challenges the imposition of the dangerous offender sentence. Defendant concedes that he did not raise that issue in the trial court. He argues, however, that he was not required to do so because, consistent with *Apprendi*, factors such as those on which his dangerous offender sentence was based constitute, in effect, elements of an aggravated offense, and the state's failure to plead those elements in the charging instrument deprived the trial court of jurisdiction to enter a conviction for that aggravated offense. In the alternative, defendant argues that the trial court's imposition of a dangerous offender sentence is reviewable as an error of law apparent on the face of the record. ORAP 5.45(4)(b). On the merits, defendant again argues that, under *Apprendi*, the facts comprising the criteria for imposition of a dangerous offender sentence constitute elements of, in effect, an aggravated offense, because they increase the range of punishment to which a defendant is exposed. Defendant argues that, as in *Apprendi*, the state was required to allege the dangerous offender factors in the indictment, and the jury was required to find those factors beyond a reasonable doubt. Defendant argues that this court therefore must vacate his dangerous offender sentence and remand his case for resentencing.

The state responds that the trial court did not lack jurisdiction to sentence defendant because defendant was validly indicted and convicted for rape and contests only the sentence imposed for that crime. The state argues that,

under that circumstance, his claim that his sentence is invalid is reviewable only if he preserved it for appeal, which he concededly did not, or if it meets the requirements for a claim of plain error. As to the latter, the state argues that defendant's claim of error does not meet those requirements, because the legal question presented by the claimed error—whether a dangerous offender sentence that is imposed as provided in ORS 161.725 to ORS 161.737 is inconsistent with the due process requirements established by the United States Supreme Court in *Apprendi*—is as yet unresolved and therefore is reasonably open to dispute.

On the merits, the state contends that, under *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981), and *State v. Wedge*, 293 Or 598, 652 P2d 773 (1982), defendant was entitled under Article I, section 11, of the Oregon Constitution, to a jury determination regarding any fact that related to the commission of his crime—that is, any fact that described the manner or circumstances in which defendant committed the crime—and that required or authorized an enhanced sentence for that crime. The state argues that, conversely, defendant was not entitled to a jury determination of a fact that served merely to characterize him, such as the existence and validity of prior convictions. According to the state, a determination that defendant met the criteria in ORS 161.725(1)(a)—that he was "suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another—was a determination of the latter type, and defendant therefore was not entitled, under Article I, section 11, to a jury determination of that fact.

As to defendant's right to due process, the state contends that, although the dangerous offender statute authorizes the imposition of an enhanced sentence, *Apprendi* nevertheless does not require the state to allege the dangerous offender factors set out in ORS 161.725(1)(a) in the indictment and does not require the jury to find those factors beyond a reasonable doubt because, unlike the factor at issue in *Apprendi*—relating to the defendant's motivation in committing his crime—the factors in ORS 161.725(1)(a) relate only to defendant's character and not to commission of his crime.

As explained below, we conclude that we need not decide whether, under the Due Process Clause as elucidated and applied in *Apprendi*, the state was required to allege in the indictment and the jury was required to find beyond a reasonable doubt that defendant was dangerous by reason of "suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another," ORS 161.725(1)(a), because defendant failed to preserve his claim of error, and it is not otherwise reviewable.

■ We begin with defendant's contention that the alleged error was "jurisdictional" and therefore can be raised for the first time on appeal. Defendant appears to make two arguments in that regard. First, as noted above, relying on *Apprendi*, on *State v. Wimber*, 315 Or 103, 843 P2d 424 (1992), and on *State v. Guzman*, 140 Or App 347, 914 P2d 1120 (1996), defendant argues that the dangerous offender factors set out in ORS 161.725(1)(a) are, in effect, elements of an aggravated offense; that the indictment in this case failed to allege those purported elements and therefore did not validly charge the aggravated offense; and that the trial court therefore lacked jurisdiction to enter a conviction or sentence him for the aggravated offense. Relying on *State v. Webb*, 324 Or 380, 927 P2d 79 (1996), he also appears to argue that the trial court lacked subject-matter jurisdiction, that is, it lacked statutory authority to try his case. We reject both contentions.

We first consider defendant's argument that the trial court lacked jurisdiction to enter a conviction against him by reason of the indictment's failure to allege the relevant dangerous offender factors. *See Wimber*, 315 Or at 109-10; *see also State v. Crampton*, 176 Or App 62, 66, 31 P3d 430 (2001) (A defendant "may raise for the first time on appeal a demurrer to an indictment on the ground of failure to state facts constituting an offense, as provided in ORS 135.630(4)."). In order to determine the merits of that argument, we turn to the Supreme Court's decision in *Apprendi*.

In *Apprendi*, the defendant fired a gun into the home of an African-American family that had recently moved into a predominantly white neighborhood. 530 US at 469. Based on

that conduct, the defendant pleaded guilty to, as pertinent here, possession of a firearm for an unlawful purpose. *Id.* at 469-70. He subsequently was sentenced under a New Jersey statute providing for an extended term of imprisonment if, in committing a crime, a defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Id.* at 469. The question thus presented was whether the Due Process Clause required the quoted factual determination to be made "by a jury on the basis of proof beyond a reasonable doubt." *Id.*

The Court began its analysis by noting that, under the applicable New Jersey statutes, the state was authorized to impose a particular punishment on the defendant if he unlawfully possessed a weapon and was authorized to impose additional punishment if he selected his victims with a purpose to intimidate them because of, among other possible reasons, their race. *Id.* at 476. The Court stated that, consistent with due process, it was "a matter of simple justice" that the procedural safeguards designed to protect the defendant should "apply equally to the two acts that New Jersey has singled out for punishment." *Id.*

The Court noted that, at the time of the nation's founding, "[a]ny possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown" and that, "[a]s a general rule, criminal proceedings were submitted to a jury after being initiated by an indictment containing all the facts and circumstances which constitute the offense[.]" *Id.* at 478 (internal quotation omitted). The Court explained that, as a result of those established practices and principles, the substantive criminal law "tended to be sanction-specific," *id.* at 479, and, although applicable statutes might prescribe a range of penalties, trial judges otherwise typically have had little discretion in imposing the sentence for a particular offense. *Id.* at 479-80.

The Court stated that the resulting "historic link" between a conviction and the sentence for that conviction "highlight[s] the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the

maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.* at 482-83 (emphasis in original). After reviewing *its* earlier case law relating to facts affecting the severity of a defendant's sentence—particularly *Jones v. United States*, 526 US 227, 119 S Ct 1215, 143 L Ed 2d 311 (1999)—the Court concluded that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[2] *Id.* at 490.

Applying that principle to the New Jersey statute before it, the Court determined that the statute's "purpose to intimidate" sentence-enhancement criterion constituted a "particular criminal *mens rea*" and that, as such, it was "perhaps as close as one might hope to come to a core criminal offense 'element.' " *Id.* at 493. The Court also reiterated that any distinction between "elements" and "sentencing factors" was both "constitutionally novel and elusive." *Id.* at 494. It explained that the relevant distinction was "not one of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's verdict?" *Id.* In that regard, the Court agreed with the New Jersey Supreme Court that the mere fact that the hate crime sentence enhancement factor was enacted as part of New Jersey's sentencing provisions "does not mean that the finding of a biased purpose to intimidate is not an essential element of the offense." *Id.* at 495 (quoting *State v. Apprendi*, 731 A2d 485, 492 (1999)). Finally, the Court noted that, unlike recidivism, "New Jersey's biased purpose inquiry goes precisely to what happened in the commission of the offense."

---

[2] In *Jones*, the Court considered "whether the federal carjacking statute, 18 USC § 2119 * * *, defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict." 526 US at 229. The Court noted that the second and third paragraphs of the statute not only provided for "steeply higher" penalties, but that the imposition of those penalties depended on "further facts (injury, death) that seem[ed] quite as important as the elements in the principle paragraph (*e.g.,* force and violence, intimidation)." *Id.* at 233. The Court concluded that, in order to avoid constitutional concerns under the Due Process Clause of the Fifth Amendment and the jury trial guarantee of the Sixth Amendment, the "better reading" of the statute was that it established three distinct offenses, the elements of each of which must be charged by indictment and proved to a jury beyond a reasonable doubt. *Id.* at 229, 252.

*Id.* at 496 (internal quotation omitted). The Court concluded that, for all of those reasons, New Jersey's statutory procedure for imposing the enhanced sentence violated the Due Process Clause. *Id.* at 497. The Court reversed the judgment of the New Jersey Supreme Court and remanded the case for further proceedings. *Id.*

We conclude that nothing in *Apprendi* requires us to regard the indictment in this case as having failed to state a crime or to conclude that the trial court therefore lacked jurisdiction to enter defendant's conviction for that crime. Even assuming that, consistent with *Apprendi*, a person who is sentenced to an enhanced sentence under ORS 161.725(1)(a) has, in effect, been convicted of an aggravated degree of the underlying offense, and even assuming that the enhancement factors set out in ORS 161.725(1)(a) therefore properly must have been regarded and treated as "elements" of the aggravated offense (that is, must have been pleaded in the indictment and proved to a jury)—questions that we expressly decline to decide here—at most, the failure to plead and prove those elements of the aggravated offense would render the indictment and conviction defective only in regard to the purported aggravated offense and would not affect the sufficiency or validity of the indictment and conviction for the offense that was, in fact, pleaded and proved.

Said another way, that defect, if it is one, would not mean that the facts stated in the indictment did not constitute an offense. *See State v. Ferrell*, 315 Or 213, 220-21, 843 P2d 939 (1992) (although the state was required to plead in the indictment any offense-subcategory fact on which it sought to rely in enhancing the sentence for the offense, that allegation was required in addition to the allegations of the elements of the underlying offense; the absence of an offense-subcategory factual allegation did not affect the sufficiency of the remaining allegations in the indictment, and therefore did not affect the validity of the conviction on the underlying offense). Accordingly, a trial court would not lack jurisdiction to enter a conviction for the alleged and proven offense. *See* ORS 135.630(4); ORS 135.711.

Thus, contrary to defendant's assertion, this case is not like *Guzman*. In that case, the indictment alleged in part

that the defendant had committed the offense of manufacture of a controlled substance. The trial court instructed the jury that possession of a controlled substance was a lesser-included offense of the charged offense. The defendant neither challenged the indictment nor objected to that jury instruction. 140 Or App at 349. The jury found the defendant not guilty on the manufacturing charge but guilty of the supposed lesser-included offense of possession, and the trial court entered a conviction for the latter. *Id.* at 350. On appeal, this court determined that possession of a controlled substance was not a lesser-included offense of manufacture of a controlled substance and that, moreover, the indictment did not contain facts expressly alleging that the defendant had committed the offense of possession of a controlled substance. *Id.* at 352-53. The court concluded that the defendant therefore had not properly been charged with possession of controlled substance and that, regardless of the defendant's failure to object to the indictment or the jury instruction, the trial court therefore lacked authority to enter a conviction for that offense. *Id.* at 353.

Here, defendant argues that he was in effect convicted of an aggravated offense, essential elements of which were, he argues, the factors set out in ORS 161.725(1)(a). He does not argue, however, that the indictment insufficiently alleged, or that the jury failed to find beyond a reasonable doubt, that he committed rape in the first degree. Thus, the situation here is more like that in *State v. Trueax*, 315 Or 396, 845 P2d 1291 (1993). In *Trueax*, the indictment was captioned "Sodomy in the Second Degree." However, the body of the indictment alleged facts supporting a conviction for sodomy in the third degree. The defendant was convicted of sodomy in the second degree. *Id.* at 398. The Supreme Court determined that, although a trial court lacks authority to enter a conviction for an offense not charged, the indictment in that case properly had charged the defendant with sodomy in the third degree and the jury necessarily had found him guilty of that offense when it found him guilty of sodomy in the second degree. *Id.* at 400. The court therefore remanded the case to the trial court with instructions to enter a conviction for sodomy in the third degree and for resentencing. *Id.* at 401.

Again, in this case, defendant properly was charged with and convicted of the offense of rape in the first degree, and he does not argue otherwise. Because the indictment did not fail to state the offense of rape in the first degree, the trial court did not lack jurisdiction to enter defendant's rape conviction. It necessarily follows that defendant cannot raise his claim of error arising out of that conviction for the first time on appeal. ORS 135.630(4); *Wimber*, 315 Or at 109-10.

We reject without discussion defendant's apparent argument that the court lacked statutory subject-matter jurisdiction to adjudicate his felony criminal prosecution. *See* ORS 131.215.

▌    We turn to defendant's assertion that the trial court's imposition of a dangerous offender sentence under ORS 161.725(1)(a) is reviewable in this court as "plain error," that is, an error of law apparent on the face of the record which, moreover, this court should exercise its discretion to review. ORAP 5.45(4)(b); *see also Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991); *State v. Longenecker*, 175 Or App 33, 27 P3d 509 (2001). Defendant asserts that the trial court's imposition of the sentence is plain error in two related respects. First, defendant asserts that it is not reasonably in dispute that, consistent with *Apprendi*, he was entitled under the Due Process Clause to a jury determination of his dangerous offender status. Second, defendant asserts that the trial court's imposition of a dangerous offender sentence without a jury determination regarding the dangerous offender factors had the effect of trying him to the court on an aggravated offense, in the absence of a written waiver of trial by jury on that offense. *See State v. Kendall*, 96 Or App 735, 773 P2d 1362, *rev den* 308 Or 382 (1989) (failure to obtain the defendant's written waiver of trial by jury as required by Article I, section 11, of the Oregon Constitution, and ORS 136.001 is error apparent on the face of the record and therefore need not be preserved for appeal).

▌▌    Defendant's claimed error is, of course, one of law. *See State v. Skelton*, 153 Or App 580, 593, 957 P2d 585, *rev den* 327 Or 448 (1998) (an unlawful sentence is an error of law). The error, if there is one, is also "on the face of the record," because we need not go outside the record or choose

among competing inferences to identify the claimed error, and the facts constituting the error—that, although the indictment did not allege and the jury did not determine the factors set out in ORS 161.725(1)(a), the trial court imposed sentence based on those factors—are undisputed. *See Ailes*, 312 Or at 381-82.

Nevertheless, the claimed legal error is not "apparent." Unlike the errors in *Longenecker* and *Skelton*, determination of the asserted error in imposing a dangerous offender sentence on defendant is not a matter of review and application of existing sentencing statutes and rules. Rather, the proper application of the Supreme Court's reasoning in *Apprendi* to the factors set out in ORS 161.725(1)(a) is an issue of first impression in this state, the resolution of which is not obvious and, thus, is "reasonably in dispute." *Skelton*, 153 Or App at 593. Moreover, our conclusion in that regard disposes of both variations of defendant's plain error argument, each of which depends, either directly or as an underlying premise, on the proposition that the Due Process Clause, as applied in *Apprendi*, indisputably requires the state to plead and prove the dangerous offender factors set out in ORS 161.725(1)(a). Because defendant is incorrect in that regard, his plain error arguments must fail.

Because defendant's claimed error was not raised and preserved in the trial court, is not jurisdictional in nature and is not plain error, we decline to consider it.

Affirmed.