Argued and submitted November 29, 1999, affirmed February 9, 2000

# STATE OF OREGON,
## *Respondent,*

*v.*

# BILLY DELMONT MAXWELL,
## *Appellant.*

### (97CR0127ST, 97CR0139ST;
### CA A100606 (Control), A100607)
### (Cases Consolidated)

998 P2d 680

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the briefs was David E. Groom, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendant appeals from his convictions following a jury trial on two felony counts of violating a stalking protective order, ORS 163.750,[1] and one felony count of stalking, ORS 163.732.[2] Defendant assigns seven errors to various trial court rulings, but only five assignments of error merit discussion. For the reasons that follow, we affirm. ORS 138.240.

■ Because the jury found defendant guilty, we view the evidence in the light most favorable to the state. *State v. Rose*, 311 Or 274, 276, 810 P2d 839 (1991). In late 1995, defendant met Lydia Bryan while she was working at a store. Beginning in early 1996, defendant frequently appeared at the store and asked Lydia to go out with him. Lydia always rebuffed his advances, but defendant persisted in asking her for dates. Defendant told Lydia that "God had told him that [she] was going to marry him." Defendant became increasingly "impatient" and "agitated" and screamed at Lydia because she refused to go out with him. Lydia was alarmed and frightened by defendant's conduct. In early July, defendant was arrested and charged with the crime of stalking

---

[1] ORS 163.750 provides, in part:

"(1) A person commits the crime of violating a court's stalking protective order when:

"(a) The person has been served with a court's stalking protective order as provided in ORS 30.866 or 163.738 or if further service was waived under ORS 163.741 because the person appeared before the court;

"(b) The person, subsequent to the service of the order, has engaged intentionally, knowingly or recklessly in conduct prohibited by the order; and

"(c) If the conduct is prohibited contact as defined in ORS 163.730 (3)(d), (e), (f), (h) or (i), the subsequent conduct has created reasonable apprehension regarding the personal safety of a person protected by the order."

[2] ORS 163.732 provides, in part:

"(1) A person commits the crime of stalking if:

"(a) The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

Lydia. Defendant pled guilty and was later convicted of that offense. However, the unwanted contact did not end with defendant's arrest.

In August, Lydia went to work for her father, Jack Bryan, at his tool sale and repair business. Shortly thereafter, defendant began visiting Lydia at that business as well. In late September, defendant appeared at Jack's business, refused to leave when Lydia asked him to, called her obscene names and told her that she "was going to get it." The next day, Lydia went to the police and filed a stalking complaint. After a hearing, the trial court issued a stalking protective order on October 7 that prohibited defendant from "knowingly * * * having contact" with Lydia. The order defined "contact" to include the conduct listed in ORS 163.730(3)(b) to (i) and (k).[3] *See* ORS 163.738(2)(b). At Lydia's request, the trial court amended the stalking protective order the same day to prohibit defendant from "coming into the visual or physical presence of [Lydia]." *See* ORS 163.730(3)(a) ("contact" means "[c]oming into the visual or physical presence of the other person"). The amended order also provided that contact meant "coming within or driving around the perimeter of the area bounded by [the four roads around Jack's business]."

---

[3] ORS 163.730(3) provides, in part:

"(3) 'Contact' includes but is not limited to:

"* * * * *

"(b) Following the other person;

"(c) Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d) Sending or making written communications in any form to the other person;

"(e) Speaking with the other person by any means;

"(f) Communicating with the other person through a third person;

"(g) Committing a crime against the other person;

"(h) Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i) Communicating with business entities with the intent of affecting some right or interest of the other person;

"* * * * *

"(k) Delivering directly or through a third person any object to the home, property, place of work or school of the other person."

Lydia and Jack were members of a church at which Jack occasionally preached. In October, defendant asked the regular pastor if Lydia attended the church and the pastor told him that she did. On February 9, 1997, during a service in which Jack preached and Lydia attended, defendant entered the church and sat down in the next to last row of the sanctuary. Jack saw defendant enter and was alarmed because defendant's previous conduct had been "unpredictable." The pastor also saw defendant enter the church and sit down. Neither he nor Jack had ever seen defendant attend services before that date. Lydia was seated near the front of the sanctuary and did not know that defendant was in the building until Jack informed her after the service. Defendant stayed for about 10 minutes and then left. After the service, the pastor found a handwritten note on the church bulletin board. The note stated, among other things, that "[t]he resurected [sic] Christ was Here! 2-9-97." It also asked: "Are there any Real Believers here? How about you Jack Bryan?" The pastor showed the note to Jack.

On February 13, defendant appeared at Jack's business, while Jack was working alone. Defendant's appearance alarmed Jack. Defendant motioned for Jack to come outside. Jack did not want to go outside and motioned for defendant to come to the door. Jack wanted to encourage defendant to seek psychological help. As defendant approached, Jack grabbed a machete to protect himself. When defendant reached the door, Jack told him not to come any closer. Defendant then told Jack that he was "the risen Jesus Christ, the Messiah" and that he had come "to offer [Jack] salvation for [his] sins." Defendant's statements further frightened Jack.

Jack reported defendant's conduct to the police. Defendant was arrested and charged in two separate indictments with four offenses arising from the February 9 and February 13 incidents.[4] Defendant was charged in the first indictment with violating the stalking protective order by "knowingly engag[ing] in conduct prohibited by the order by coming into the visual and/or physical presence of [Lydia]" when he entered the church on February 9. Defendant was

---

[1] The trial court dismissed one of the four charges. The dismissed charge is not a subject of this appeal.

charged with and ultimately convicted under the second indictment for two offenses arising from his contact with Jack on February 13. First, defendant was charged with violating the amended stalking protective order by "knowingly engag[ing] in conduct prohibited by the order by contacting Jack at [his place of business]," a location within the bounded area that defendant was restrained from entering. Second, the indictment charged defendant with the crime of stalking, which it alleged that defendant committed by "knowingly [alarming Jack], a member of the immediate family of the victim [Lydia], by engaging in repeated and unwanted contact with [Jack]." Because of his prior conviction for stalking Lydia, each of the three counts was charged as a Class C felony and not as a misdemeanor. *See* ORS 163.732(2) and ORS 163.750(2). The charges were consolidated for trial. After a jury trial, defendant was convicted on all three counts. This appeal followed.

■ On appeal, defendant first challenges his conviction for violating the amended stalking protective order arising from the February 9 incident at the church. Defendant contends that the trial court erred by denying his motion for judgment of acquittal, in which he argued that the amended stalking protective order violated Article I, sections 20 and 21, of the Oregon Constitution, because it incorporated the term "presence" from the statutory definition of "contact." ORS 163.730(3)(a). In essence, defendant argues that, as applied, the amended order is unconstitutionally vague in restraining him from coming within the "visual or physical presence" of Lydia.[5]

■ The state initially responds that defendant did not adequately preserve the claimed error because he did not raise it by pretrial demurrer, ORS 135.630, or by a motion to arrest judgment, ORS 136.500, following his conviction. We disagree. If a criminal statute is unconstitutionally vague, then the facts alleged in an indictment under that statute do

---

[5] Defendant also contends that "presence" is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. However, beyond a mere citation to that constitutional provision, defendant develops no argument and cites no authority supporting his contention. Because the issue has not been adequately briefed, we do not address it. *See State v. Wilson*, 161 Or App 314, 323 n 2, 985 P2d 840 (1999).

not constitute an offense. *State v. McKenzie*, 307 Or 554, 560, 771 P2d 264 (1989). A defendant may challenge a criminal statute for vagueness either by means of a pretrial demurrer or a motion in arrest of judgment. *Id. See* ORS 135.630(4). Should the trial court grant either motion, the state may appeal that ruling and the appellate courts determine, as a matter of law, the constitutionality of the challenged statute. ORS 138.060(1) and (2). In contrast, if a trial court grants a motion for judgment of acquittal, then the state cannot appeal and future prosecution for that offense is barred. ORS 136.445.

In order to preserve the state's right to appeal from trial court rulings that declare a statute unconstitutionally vague, the Supreme Court concluded in *McKenzie* that trial courts should treat motions for judgment of acquittal as "premature motions in arrest of judgment." *Id.* at 561. The court held that "the motion should be denied, with leave to renew it after the verdict." *Id.* However, if the trial court considers the merits of the motion and rules against the defendant, then the premature decision causes no harm because the defendant is able to appeal. In that event, a "viable issue is presented [to the appellate courts as to] whether [the] defendant has been convicted under an unconstitutionally vague statute." *Id.* Here, defendant raised the issue in a motion at the close of the evidence. The trial court considered the merits of the motion and ruled against defendant. Therefore, under the reasoning of *McKenzie*, the question of whether the term "presence" is unconstitutionally vague is a viable issue on appeal.

In order to satisfy the demands of the Oregon Constitution, "[t]he terms of a criminal statute must be sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties." *State v. Chakerian*, 325 Or 370, 382, 938 P2d 756 (1997) (quoting *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985)). A criminal statute must (1) "provide notice, with a reasonable degree of certainty, of the conduct that is prohibited"; and (2) "prevent a judge, jury, or other law enforcer from 'exercis[ing] uncontrolled discretion in punishing defendants.' " *Id.*

■ Defendant asserts that the word "presence" has "no discernible parameters" and, thus, provided "no guidance" for him to determine whether or not his conduct might violate the order. Although defendant concedes that the term is not vague in all possible applications, he poses various hypothetical fact situations and asks whether those examples fall within the meaning of "visual presence" or "physical presence." However, defendant's abstract concern about how the statute might be applied to other circumstances is of no consequence to the validity of his own convictions, provided that his conduct was clearly proscribed by the statute. *Id.*

■ ■ The amended stalking protective order prohibited defendant from entering Lydia's "visual or physical presence." In considering a vagueness challenge, we follow the accepted rule of statutory construction that words of common usage are given their plain, natural and ordinary meaning. *State v. Langley*, 314 Or 247, 256, 839 P2d 692 (1992), *adhered to on recons* 318 Or 28, 861 P2d 1012 (1993). "Presence" means "the condition of being within sight or call" or "the place in front of or around a person." *Webster's Third New Int'l Dictionary*, 1793 (unabridged ed 1993). "Visual" means "capable of being seen." *Id.* at 2558. "Physical" means "of or relating to the body." *Id.* at 1706. Based on those definitions, a person is within another's "visual or physical presence" when the person is capable of being seen—whether or not the person is in fact seen—or when the person is within physical calling distance. Defendant willingly entered the church sanctuary knowing that Lydia regularly attended services at the church. In doing so, defendant knew that he was capable of being seen by Lydia or would be within calling distance of her. We conclude that the amended order provided defendant notice, *with a reasonable degree of certainty*, that by entering the same room as Lydia—in this case, the church sanctuary—he would come within her visual or physical presence.

■ As far as the second prong of the test for vagueness is concerned, we conclude that the plain and ordinary meaning of "visual or physical presence" is sufficiently definite so as to prevent a judge or jury from "exercising uncontrolled discretion" in punishing a defendant. Official discretion is circumscribed because defendant could not be punished unless it

was determined beyond a reasonable doubt that he knowingly placed himself at a location where he was capable of being seen or within physical calling distance of the protected person. Therefore, the term "visual or physical presence" is not unconstitutionally vague under Article I, sections 20 and 21, of the Oregon Constitution.

Defendant next argues that the trial court erred in denying his motion for judgment of acquittal on all counts because there was no evidence that he *threatened* either Lydia or Jack when he had "contact" with them on February 9 and 13. Defendant asserts further that all three convictions were based on contacts that involved communication. Relying on *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999), defendant contends that each conviction therefore violated Article I, section 8, of the Oregon Constitution. The state counters that defendant's reliance on *Rangel* in misplaced, because his convictions were based on conduct unrelated to expression.

In *Rangel*, the Supreme Court held that "a contact based on communication must consist of a threat that convincingly expresses *to the addressee* the intention that it will be carried out, and that the actor has ability to do so." *Id.* at 306. However, there is no constitutional violation if none of the contacts on which the state relies for a conviction involves communication. *Id.* at 300. We must therefore determine whether defendant's convictions were based on contacts that involved communication and, if so, then whether the evidence was sufficient for the jury to find beyond a reasonable doubt that defendant communicated a threat of the type required by *Rangel*. *See State v. Krummacher*, 269 Or 125, 138, 523 P2d 1009 (1974) (articulating standard of review for denial of motion for judgment of acquittal).

With respect to the February 9 incident at the church, defendant was charged with "knowingly engag[ing] in conduct prohibited by the [stalking protective order] by coming into the visual and/or physical presence of [Lydia]." Defendant points to the admission in evidence of the note that the pastor found on the bulletin board and argues that because Jack testified the note "scared" him, defendant's conviction was based on communication. We disagree. The "contact" that the state was required to prove did not involve communication; the state needed only to prove that defendant

knowingly came within Lydia's visual or physical presence. The note was relevant only to the extent that it tended to prove that defendant was in Lydia's presence. Whether or not the note frightened Jack was irrelevant to the charged offense and, thus, was not a basis for defendant's conviction. Because defendant's conviction for violation of the amended stalking protective order arising from the February 9 incident did not require a threat of harm, the trial court properly denied his motion for judgment of acquittal on that charge.

With respect to the February 13 incident, defendant was charged with violating the stalking protective order by "knowingly engag[ing] in conduct prohibited by the order by contacting [Jack at his store], a business within the [area defendant was restrained from entering]." In order to establish that violation under the evidence in this case, the state was required to prove that defendant *entered* the area prohibited by the order. That charge likewise did not involve communication, and the trial court properly denied defendant's motion for judgment of acquittal from it.

Finally, the indictment alleged that defendant committed the crime of stalking on February 13 by "knowingly [alarming Jack], a member of the immediate family of the victim [Lydia], by engaging in repeated and unwanted contact." The indictment did not specify whether the "contact" on which the state relied involved communication. It is true that Jack testified that defendant made statements that alarmed him, but those statements did not constitute the contact that was the subject of the stalking charge. The jury was instructed that, in the context of that charge, "contact" meant that defendant must have come "into the visual or physical presence of the other person," namely, Jack. Here, there was evidence that defendant came within Jack's physical presence before any words were spoken and that defendant's presence so alarmed Jack that he armed himself with a machete. Therefore, we conclude that the trial court did not err in denying defendant's motion for judgment of acquittal on the stalking charge.

In a related vein, defendant asserts that the trial court erred by failing to instruct the jury as to what type of threat was required in order to convict defendant on any of

the counts charged. A trial court's failure to instruct the jury properly is reversible error only if there is prejudice to the defendant. ORS 19.415(2); *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998). The failure to give a requested instruction is not error if the proposed instruction does not pertain to a material issue in the case. *Id.* Here, the substance of defendant's communications to Lydia and Jack were not material issues because, as we have already concluded, the "contacts" on which each count was based did not involve communication. The court did not err in declining to give the proposed instruction.

Defendant next asserts that the trial court erred when it entered felony judgments of conviction pursuant to ORS 163.750(2)(b),[6] on the two stalking protective order violations, because the indictments failed to allege that defendant had been previously convicted of the crime of stalking. Instead of alleging a prior stalking conviction, each indictment alleged that defendant *"feloniously * * ** [engaged] in conduct prohibited by the order."* (Emphasis added.) Although defendant did not object to the trial court's treatment of the charges as felonies, he argues that the issue is preserved because the trial court exceeded its jurisdiction in convicting him of an offense not charged. *See State v. Guzman*, 140 Or App 347, 350-51, 914 P2d 1120 (1996) (waiver cannot confer jurisdiction in absence of an accusation charging a violation of the criminal law).

An indictment fails to state facts constituting an offense if it does not allege each of the material elements of the offense. *State v. Wimber*, 315 Or 103, 109, 843 P2d 424 (1992). In order to allege a violation of a stalking protective order based on noncommunicative conduct, an indictment must allege that the actor has been served with a stalking

---

[6] ORS 163.750(2) provides, in part:

"(a) Violating a court's stalking protective order is a Class A misdemeanor.

"(b) Notwithstanding paragraph (a) of this subsection, violating a court's stalking protective order is a Class C felony if the person has a prior conviction for:

"(A) Stalking; or

"(B) Violating a court's stalking protective order."

protective order and has intentionally, knowingly or recklessly engaged in conduct prohibited by the order. ORS 163.750(1). The failure to allege a prior conviction in the indictment does not constitute the omission of a material element of the offense of violation of a stalking protective order. Such an omission goes to the definiteness and certainty of the accusatory instrument and does not affect its sufficiency. *See State v. Tennyson*, 30 Or App 575, 578, 567 P2d 596 (1977) (failure to include prior conviction in accusatory instrument for purposes of charging a traffic *crime rather than infraction* under *former* ORS 484.365 goes to definiteness rather than sufficiency).

 Because a challenge to the definiteness and certainty of an accusatory instrument is not a jurisdictional challenge, defendant was required to raise the issue by means of a demurrer so that any necessary corrections could be made to the indictment before trial. *State v. Montez*, 309 Or 564, 597, 789 P2d 1352 (1990). *See State v. Holland*, 202 Or 656, 666-67, 277 P2d 386 (1954) ("Errors which may be curable should not be ignored until jeopardy has attached, and then be insisted upon as a bar."). Defendant did not properly object to the definiteness and certainty of the indictment; therefore, he waived his argument, and we will not review it.

 Finally, defendant contends that the trial court erred in entering felony judgments of conviction on all three counts because the state failed to introduce evidence of defendant's prior conviction to the jury. When defendant objected to the state's attempt to introduce evidence of his prior conviction, the trial court suggested that the prior conviction did not have to be disclosed to the jury if defendant stipulated that he had been previously convicted of stalking. Defendant agreed to the court's proposal and stipulated to the existence of the prior conviction in order to avoid its mention to the jury. Assuming without deciding that the trial court erred, defendant may not now complain that the state failed to introduce evidence of his prior conviction. *See State v. Koennecke*, 274 Or 169, 173-74, 545 P2d 127 (1976) (invited error may not furnish basis for reversal).

Affirmed.