Argued and submitted February 21, affirmed August 15, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# GREGG LEON CRAMPTON,
*Appellant.*

## 98CR0094; A104450

31 P3d 430

Jennelle Hall, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, State Public Defender.

Thomas C. Patton, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

Defendant was convicted of possession of a controlled substance, ORS 475.992; unlawful possession of a firearm, ORS 166.250(1)(b) (1997); and unlawful possession of a short-barreled shotgun, ORS 166.272. On appeal, he challenges the sufficiency of the indictment on the ground that the allegations in count 2, relating to unlawful possession of a firearm, failed to state a crime. He also assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of the traffic stop preceding his arrest. We affirm.

We are bound by the trial court's factual findings when supported by the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). To the extent that the trial court did not make findings concerning matters that were in dispute, "we will presume that the facts were decided in a manner consistent with the ultimate conclusion * * * made by the trial court[.]" *Id.*; *see also Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968); *State v. Kauffman*, 162 Or App 402, 986 P2d 696 (1999), *rev den* 329 Or 650 (2000).

While investigating a report of a suspicious car in a convenience store parking lot, Prineville Police Officer Donham saw defendant and recognized him as a person who had been stopped a week earlier and in whose car police had discovered guns and drugs. Officer Donham also learned that defendant's driving privileges were suspended. After defendant drove away from the parking lot, the officer stopped him for driving while suspended. As she approached defendant's car, defendant moved around "a lot" and kept glancing back toward the officer's patrol car. As the officer contacted defendant, he "kept reaching around" and seemed agitated and nervous. The officer asked defendant whether he had consumed any alcohol or drugs and asked him whether he had any guns in the car. Defendant denied consuming alcohol or drugs but told the officer that there was a gun in the back seat and that there "might be" other weapons in the car. The officer asked for defendant's consent to search the car, but defendant refused.

Eventually, a second officer, Sergeant Hensley, arrived and, based on defendant's failure to keep his hands on the steering wheel as requested, ordered defendant out of the car and frisked him. Defendant told Sergeant Hensley that there was a handgun under the front seat. Sergeant Hensley handcuffed defendant and told Officer Donham about the gun. Officer Donham retrieved it. While doing so, she saw a box of ammunition on the front passenger seat. When she opened the passenger door to retrieve the ammunition, Officer Donham found a plastic bag containing a powdery substance that she believed was methamphetamine. Sergeant Hensley transported defendant to the police station. Officer Donham then searched the entire car. Her search included opening a locked toolbox in which she discovered cash, baggies, a 9mm pistol, a sawed-off shotgun, and four loaded gun magazines. The officer also examined the contents of two "long cases" in which she discovered a rifle, ammunition, and other weapons-related paraphernalia.

Defendant was charged with multiple offenses, including unlawful possession of a firearm, which count 2 of the indictment alleged to have been committed as follows:

"UNLAWFUL POSSESSION OF A WEAPON ORS 166.250

"The said defendant, on or about April 22, 1998, in Crook County, Oregon, did unlawfully and knowingly carry concealed and readily accessible to the person within the vehicle which was under the defendant's direction and control, a handgun."

Defendant did not demur to or otherwise challenge the indictment. In a pretrial motion, he moved to suppress evidence obtained as a result of the traffic stop. The trial court denied the motion, and defendant was convicted.

■ On appeal, defendant first asserts that the facts stated in the unlawful possession of a weapon count of the indictment (quoted above) do not constitute a crime, because there was no allegation that defendant lacked a concealed weapons permit. According to defendant, the indictment was fatally defective because, even if he had admitted all of the allegations in that count, he would not have been guilty of a crime. The state responds that, even assuming that the lack of a permit is an element of the offense provided in ORS

166.250(1)(b) (1997),[1] the word "unlawfully" sufficed as an allegation of that element. According to the state, the indictment's use of the word "unlawfully" necessarily informed defendant that the state intended to prove that he did not have a permit and also precluded defendant from being able to admit all of the allegations in the indictment without being guilty of a crime. The state also argues that there is little likelihood that defendant was confused or surprised by the wording of the indictment, because the offense of unlawful possession of a weapon is not complex in nature and because evidence of defendant's lack of a permit was introduced at a pretrial hearing. Further, in the state's view, any defect was merely one of form, not substance. Finally, the state argues that, even assuming that the indictment was defective in the manner asserted by defendant, any defect was "cured" by the verdict.

■■■■ A defendant may raise for the first time on appeal a demurrer to an indictment on the ground of failure to state facts constituting an offense, as provided in ORS 135.630(4). *State v. Young*, 161 Or App 507, 509-11, 985 P2d 835 (1999), *rev den* 329 Or 590 (2000).[2] Under ORS 135.630(4), an "indictment fails to state facts constituting an offense when it fails to allege each of the essential elements of the offense." *State v. Wimber*, 315 Or 103, 109, 843 P2d 424 (1992); *State v.*

---

[1] ORS 166.260(1)(b) (1997) provided, in part:

"(1) Except as otherwise provided in this section, ORS 166.260, 166.270, 166.274, 166.280, 166.291, 166.292 or 166.410 to 166.470, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"* * * * *

"(b) Carries concealed and readily accessible to the person within any vehicle which is under the person's control or direction any handgun, without having a license to carry such firearm as provided in ORS 166.291 and 166.292[.]"

Throughout this opinion, we cite only the 1997 version of ORS 166.250. In 1999, the legislature eliminated the language in question (the reference to lacking a license to carry a concealed firearm) and expressly provided for such a license to be an affirmative defense to the crime. Or Laws 1999, ch 1040, §§ 1, 3.

[2] By contrast, when the challenge is to the definiteness and certainty of an accusatory instrument under ORS 135.630(6), the defect is not jurisdictional and therefore must be raised by a demurrer before trial. *State v. Maxwell*, 165 Or App 467, 998 P2d 680 (2000).

*Maxwell*, 165 Or App 467, 477, 998 P2d 680 (2000). An indictment pleaded in the language of the relevant statute ordinarily is sufficient to withstand a demurrer. *See, e.g., State v. Lotches*, 331 Or 455, 466, 17 P3d 1045 (2000), *cert denied* 122 S Ct 82 (2001). But that is not to say that an indictment must be pleaded in the language of the relevant statute. Rather, under ORS 132.540(3), "[w]ords used in a statute to define a crime need not be strictly pursued in the indictment, but other words conveying the same meaning may be used." Thus, when an indictment is not pleaded in the language of the statute, it will withstand a challenge on the ground that the facts stated do not constitute a crime if it contains

> "[a] statement of the acts constituting the offense in ordinary and concise language, without repitition [*sic*], and in such manner as to enable a person of common understanding to know what is intended[.]"

*Wimber,* 315 Or at 109 (citing and quoting *State v. Holland*, 202 Or 656, 669, 277 P2d 386 (1954); internal quotation marks omitted). Those standards are consistent with the four objectives that an indictment serves: (1) to provide notice—*i.e.*, to furnish the defendant with sufficient notice so as to enable him or her to properly prepare a defense; (2) to secure a defendant's right against double jeopardy—*i.e.*, to identify the crime so as to provide protection against further prosecution based on the same crime; (3) to facilitate judicial review—*i.e.*, to inform the court as to the facts charged, so that the court may determine whether the prosecution's case is based on a legally valid interpretation of the offense; and (4) to secure the court's jurisdiction—*i.e.*, to ensure that the defendant is tried only for an offense that is based on facts found by a grand jury. *See Wimber*, 315 Or at 118-19 (Unis, J., dissenting) (synthesizing cases).

As a threshold matter, the state does not dispute that, under ORS 166.250(1)(b), lack of a permit or license is an element of the offense of unlawful possession of a firearm. At least for purposes of this case, the state is willing to assume that it is, consistently with our decision in *State v. Brust*, 158 Or App 455, 974 P2d 734, *rev den* 329 Or 61 (1999). In *Brust*, this court concluded that the lack of a permit or license to carry the firearm is "a necessary ingredient of

the definition of the crime" and the state therefore must "prove, as an element of the offense," that the defendant did not have a license to carry the firearm. Consistently with *Brust*, an indictment for unlawful possession of a weapon under ORS 166.250(1)(b) must contain a factual allegation relating to that element. The issue in this case therefore is whether an allegation that defendant "unlawfully" possessed the firearm is sufficient to state that element, which is an issue that we review as a matter of law. *See* ORS 138.220.

We conclude that the indictment was sufficient. The word "unlawful" is a word of common usage; it means "not authorized or justified by law : not permitted or warranted by law." *See Webster's Third New Int'l Dictionary*, 2502 (unabridged ed 1993). Accordingly, although count 2 of the indictment was not pleaded in the precise language of ORS 166.250(1)(b), the disputed allegation consisted of "ordinary and concise language." *Wimber*, 315 Or at 109. Using the ordinary understanding of the term "unlawfully," the indictment effectively alleged that defendant "without legal authorization or justification" knowingly carried a handgun concealed and readily accessible to him in a vehicle. Such an understanding conveys the "same meaning" as would be conveyed had the indictment been· phrased in terms of the failure to have a license to carry the firearm. *See* ORS 132.540(3).

In addition, count 2 of the indictment was captioned in part "UNLAWFUL POSSESSION OF A WEAPON ORS 166.250" and that count alleged that defendant "did * * * carry [the weapon] within the vehicle which was under the defendant's direction and control." That context sufficiently informed defendant that he was being charged under paragraph (1)(b) of ORS 166.250. The indictment as a whole thus enabled defendant, as a matter of "common understanding," to understand that the allegation that he carried the weapon "unlawfully" necessarily referred to the only element of paragraph (1)(b) that was not expressly alleged in that count, namely, the element relating to lack of a permit. *See State v. Metz*, 131 Or App 706, 709-10, 887 P2d 795 (1994), *rev den* 323 Or 483 (1996) (although the facts alleged in the indictment in that case were not stated in the precise language of the relevant statute, it nevertheless "d[id] not require an

impermissible mental leap to infer" that certain facts alleged therein constituted a particular element of the crime). Stated another way, in the context of the allegations of count 2 as a whole, the word "unlawfully" "convey[ed] the same meaning," ORS 132.540(3), as the words "without having a license to carry such firearm." For those reasons, the allegations in count 2 as a whole—including the use of the word "unlawfully"—were consistent with the textual requirements for a statement of the conduct constituting the offense of unlawful possession of a weapon as provided in ORS 166.250(1)(b).[3]

So pleaded, the language of count 2 of the indictment also served the objectives of an indictment. *See State v. Woodson*, 315 Or 314, 845 P2d 203 (1993) (considering whether indictment was consistent with objectives). Again, taken as a whole—including the identification of ORS 166.250 in the caption and the reference in the text of count 2 to carrying the weapon "within [a] vehicle"—the indictment informed defendant that he was being charged with a violation of ORS 166.250(1)(b). It therefore gave him sufficient notice to enable him to prepare a defense as to that crime, including a defense relating to his lack of a permit. For the same reason, the indictment also sufficiently identified the crime so as to protect defendant against further jeopardy as to that crime and sufficiently informed the court as to the facts alleged. Finally, the language of the indictment—in which the word "unlawfully" logically could refer only to the lack of a permit—ensured that defendant was tried only for an offense based on facts found by the grand jury. We therefore reject defendant's first assignment of error and turn to his assertion that the trial court erred in denying his motion to suppress.

At the hearing on his motion, defendant conceded that Officer Donham was authorized to stop defendant based on the fact that he did not have a valid driver's license. Defendant argued, however, that the officer was not authorized to broaden the scope of the traffic stop by asking defendant

---

[3] Our conclusion is limited to the use of the term "unlawfully" in the context of this crime and this particular indictment. We do not suggest that the word "unlawfully" would suffice to allege any and every other element of this or any other offense, or even that it would suffice to allege *this* element of this offense if the indictment were pleaded less specifically in other respects.

whether he had any guns in the vehicle, because she lacked a specific and articulable basis to believe that defendant might pose an immediate threat of serious physical injury to the officer or others. In particular, defendant argued that his possession of weapons a week earlier and his purportedly nervous demeanor and furtive movements before and during the stop were not enough to justify the officer's inquiry regarding weapons in the car. Defendant also argued that, even assuming that the officer's inquiry was a proper officer safety inquiry, the officer was not authorized to search defendant's vehicle after he had been handcuffed and frisked.

The trial court found that Officer Donham was aware that defendant had been arrested approximately a week earlier and that he had possessed controlled substances and firearms at that time. The trial court also found that, during the incident at issue in this case, the officer learned that defendant was driving without a valid driver's license; that, after the officer stopped defendant, he was hyperactive and did not follow instructions, causing the officer reasonably to conclude that defendant might be affected by controlled substances; that defendant stated, in response to the officer's inquiry, that he had a gun in the car; that defendant did not keep his hands on the steering wheel as requested; that the officer's entry into the car, which led to the discovery of the loaded pistol and bag of white substance, was a permissible search for the purpose of locating firearms; and that, after the officer found "illegal drugs," it was "reasonable to believe that additional contraband could be found in the vehicle or containers within the vehicle." The trial court therefore denied defendant's motion to suppress.

On appeal, relying on *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), defendant argues again that, at the time Officer Donham asked him whether he had a firearm, she lacked reasonable suspicion, based on specific and articulable facts, that he might pose an immediate threat of serious physical injury to others. According to defendant, the officer's inquiry whether he had a gun in the car therefore was unauthorized under ORS 810.410 and impermissible under Article I, section 9, of the Oregon Constitution.[4] Defendant also argues

---

[4] Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

that the subsequent warrantless search of the vehicle—including the search of the closed containers—was not justified as a search incident to arrest for officer safety purposes or to prevent the destruction of evidence because, by the time the search occurred, defendant had been ordered out of the car and handcuffed. Finally, defendant argues that the warrantless search of the vehicle and the closed containers was not justified as a search incident to arrest for the purpose of discovering evidence relevant to the crime for which he was being arrested, because the intensity of the search was not reasonable; in particular, defendant asserts that Officer Donham lacked any particularized knowledge that there was contraband in the locked containers.

The state responds that Officer Donham's initial inquiry to defendant as to whether he had guns in his car was not prohibited by Article I, section 9, and was authorized under ORS 810.410. The state also argues that Officer Donham had probable cause to conduct a warrantless search of the vehicle under the automobile exception to the warrant requirement and had probable cause to search the vehicle and the closed containers within the vehicle as a search incident to defendant's arrest.

We begin with the lawfulness of Officer Donham's initial inquiry regarding the presence of guns in defendant's vehicle. ORS 810.410 provides, in part:

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation.

"(c) May make an inquiry into circumstances arising during the course of a detention and investigation under paragraph (b) of this subsection that give rise to a reasonable suspicion of criminal activity.

"(d) May make an inquiry to ensure the safety of the officer, the person stopped or other persons present, *including an inquiry regarding the presence of weapons.*"[5]

---

search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[5] The quoted provisions were effective as of October 4, 1997. The stop at issue in this case occurred on April 23, 1998.

(Emphasis added.) By the plain meaning of the statute's terms, ORS 810.410(3) permits the inquiry made here.

Moreover, for the purposes of Article I, section 9, a question or inquiry such as that posed by Officer Donham in this case does not transform a police-citizen encounter into a stop—or, more accurately in the context here, a separate stop. *See State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991) (mere conversation that involves no restraint of the citizen is neither a stop requiring reasonable suspicion nor an arrest requiring probable cause). Accordingly, when asked within the context of an otherwise valid stop, such an inquiry does not violate Article I, section 9. *See State v. Amaya*, 176 Or App 35, 29 P3d 1177 (2001).

Because Officer Donham's inquiry, during the traffic stop, regarding the presence of a firearm violated neither ORS 810.410 nor Article I, section 9, that inquiry does not require suppression of the evidence in this case.

 We turn to the subsequent search of defendant's vehicle. Under Article I, section 9, there are three valid justifications for a search incident to lawful arrest: to protect the officer's safety; to prevent the destruction of evidence or the escape of the defendant; and to discover evidence relevant to the crime for which the defendant is being arrested. *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994).[6] As to the third justification, a police officer who, while investigating a crime, develops probable cause to believe that another crime has been committed may conduct a search for evidence that is relevant to the latter crime and that reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest. *State v. Fuller*, 158 Or App 501, 507, 976 P2d 1137 (1999); *State v. McCoy*, 155 Or App 610, 614-15, 964 P2d 309 (1998) (citing *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986)); *State v. Kemp/Haworth*, 112 Or App 522, 528, 831 P2d 37, *rev den* 313 Or 627 (1992). A search incident to arrest does not justify

---

[6] Where a search incident to arrest is being conducted for officer safety purposes or to prevent the defendant's escape, any search beyond a limited "pat-down" must be justified by a reasonable suspicion, based on the facts and circumstances surrounding the arrest, that the person being arrested poses a serious threat of harm or escape. *Hoskinson*, 320 Or at 87 (citing *Bates*, 304 Or at 524).

an "exploratory seizure of *everything* in the arrestee's immediate possession." *Owens*, 302 Or at 204-05 (emphasis added; internal quotation marks omitted). Rather, the search must be reasonable in relation to the objects sought and the intensity of the search. *State v. Cocke*, 161 Or App 179, 184, 984 P2d 321 (1999), *rev allowed* 329 Or 650 (2000) (reasonableness of search incident to arrest traditionally is measured by the relationship in time, scope, and intensity of the search to the arrest, in light of all the circumstances). Depending on the circumstances, a search incident to arrest for the purpose of discovering evidence related to the crime of arrest can extend to an examination of the contents of closed containers. *See State v. Caraher*, 293 Or 741, 653 P2d 942 (1982) (search of the defendant's purse, including the coin compartment of a wallet in the purse); *see also Kemp / Haworth*, 112 Or App at 528; *State v. Gotham*, 109 Or App 646, 820 P2d 884 (1991), *rev den* 312 Or 677 (1992).

 Probable cause to arrest a person exists when there is a substantial objective basis for believing that, more likely than not, an offense has been committed and that the person to be arrested committed it. ORS 131.005(11). That is, the officer must subjectively believe that a crime has been committed and that belief must be reasonable under the circumstances. *See Owens*, 302 Or at 204. Probable cause depends on the totality of the circumstances and not on isolated facts; although a lay person might not find a particular fact to be significant, an officer with training and experience could find it to be incriminating, especially when evaluated in conjunction with other facts. *McCoy*, 155 Or App at 615; *see also State v. Martin*, 327 Or 17, 23, 956 P2d 956 (1998) (officer's "observations and conclusions, filtered through the lens of his experience" shown to be objectively reasonable).

 In this case, Officer Donham testified at the suppression hearing that she stopped defendant for the crime of driving while suspended. As Officer Donham approached defendant, he was moving around "a lot" and, after she contacted him, he was nervous, agitated, and did not comply with instructions to keep his hands on the steering wheel. Officer Donham testified that, based on those circumstances, she believed that, at the time defendant was arrested, he was under the influence of drugs. In addition, Officer Donham

testified that, at the time she contacted defendant, she knew that defendant had recently been arrested with guns in his possession; she believed that defendant could have acquired additional guns since that time; defendant informed her and Sergeant Hensley that there was a gun in the car; and she believed that defendant did not have a concealed handgun permit, because dispatch had not informed her that defendant had a permit. Officer Donham testified that, based on those circumstances, she also believed that defendant was unlawfully in possession of a firearm.

Based on Officer Donham's testimony, we conclude that she had the requisite subjective and objective probable cause to believe that defendant had committed the crimes of driving under the influence of intoxicants and unlawful possession of a weapon. The arrest of defendant therefore was lawful. Incident to that lawful arrest, police also were authorized to search for evidence of those crimes, so long as the search was reasonable in time, scope, and intensity.

We conclude that the search in this case met that standard, including the search of the locked toolbox and the closed "long cases." First, the entire search was closely related in time and space to defendant's arrest, occurring during and immediately after that arrest. Second, the search was reasonable in scope or "intensity." Although it involved opening closed containers, the containers were within defendant's vehicle and defendant had indicated that he "might have" additional weapons in his vehicle. Additionally, the containers were the types of containers in which weapons or drugs were likely to be found. In the totality of the circumstances, the search of defendant's vehicle—including the closed containers therein—was a valid search incident to arrest for the purpose of discovering evidence of the crimes for which defendant was arrested.

Affirmed.