Argued and submitted February 27, reversed and remanded May 1, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# JERRY LYNN WOODALL,
*Appellant.*

## C992388CR; A109908

45 P3d 484

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Judge, and Osborne, Judge pro tempore.

BREWER, J.

**BREWER, J.**

Defendant appeals from a judgment convicting him of possession of a controlled substance. ORS 475.992. Defendant contends that the trial court erred in denying his motion to suppress evidence discovered by police inside a metal box found in his truck. We reverse and remand.

In August 1999, Sergeant Calvert of the Cornelius Police Department stopped defendant for failure to use a seat belt while driving his truck. When Calvert reached the truck, he recognized the passenger in the truck as a person whom other officers had, in the past, observed as being under the influence of methamphetamine. Defendant, who did not appear to be intoxicated, identified himself as Marlo Floyd Woodall, which was not his real name. Calvert asked defendant for his license, registration, and proof of insurance. When defendant was unable to produce any of those documents, Calvert arrested him for failing to carry or present a driver's license. ORS 807.570. Calvert placed defendant in his patrol car and allowed the passenger to leave on foot.

Pursuant to a Cornelius city ordinance, Calvert impounded the truck and, along with Officer Schmid, began to inventory its contents. In the truck's cab, Calvert found an open package of unused syringes. The officers also found a grey metal box, which Schmid opened. Inside the box, he found reflectors. Under the reflectors was a rag, which was wrapped around an unused syringe and a spoon containing methamphetamine residue.

Defendant moved to suppress the evidence found in the metal box. The state contended that the box was opened pursuant to one of two exceptions to the warrant requirement: the automobile exception or the inventory exception. After hearing argument, the trial court found and concluded:

"Okay. This case, the defendant was driving the vehicle. He was stopped for a traffic violation observed by the officer following him; the traffic infraction, a seat belt violation, not wearing a seat belt. He approached the driver, this defendant, asked him for a driver's license, eventually established that he did not have one in his possession. He

was arrested for failing to carry and present a driver's license, a Class A misdemeanor, I believe.

"After the arrest, pursuant to city ordinance, the vehicle was impounded. And impounded vehicles, by Cornelius city ordinance, are required to be inventoried. This vehicle was inventoried by the police officers. In the process of the inventory, he found a bag of—a partially empty bag that contained insulin syringes. There's an exhibit that shows it, and we have the testimony.

"It's also interesting what wasn't found. No insulin was found and no other injectable legal medication was found, just the syringes; again, a partially consumed, for lack of a better word, bag of syringes, insulin syringes.

"The officer has had training and knows that these syringes are frequently used by drug abusers, illegal drug users, to inject controlled substances, including methamphetamine.

"The passenger in the vehicle was a person known by the officers to be a drug abuser and a person whose drug of choice, among others, apparently, was methamphetamine, and that he consumed it in two ways: either by snorting it or by injecting it.

"Taking all of those circumstances into account, the officers had probable cause to believe that the vehicle contained controlled substances; that is, it's more likely than not that a search would disclose controlled substances. They had a choice at that time. They could either obtain a warrant or rely upon some other circumstance, exigent circumstance, to search the vehicle.

"The automobile exception comes into play. This was a mobile automobile that had been driven just prior to the stop. And the officers, under that exception to the warrant requirement, could and did search the vehicle further. And in the process, of course, as we know, of the inventory and the search of the vehicle, they found this box.

"The box was opened. The box, a metal box, was a box that easily could have contained and did contain further evidence of drug use and/or possession. It was searched, as I've said, and opened, and those items were found. They were found during a legitimate search. The probable cause arose during an inventory. As I've said before, the officers were justified in searching, opening the box because of the

automobile exception, and the evidence is admissible, and I'm denying the motion to suppress the evidence in this case."

Defendant waived jury trial, and the trial court convicted him of giving false information to an officer, ORS 807.620; failing to carry or present a driver's license, ORS 807.570; and possession of a controlled substance, ORS 475.992.[1]

■     On appeal, defendant contends that the trial court erred in admitting the evidence found in the metal box. He argues that no exception to the warrant requirement justified the officers' decision to open the box without first obtaining a warrant. The state responds that the search was justified by either the automobile exception or, under a right-for-the-wrong-reason analysis, the search-incident-to-arrest exception.

■     We review the denial of a motion to suppress for errors of law, deferring to the trial court's findings of historical fact when there is evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). "[E]xcept in a few carefully defined classes of cases, a search of private property without valid consent is unreasonable unless it has been authorized by a valid search warrant." *State v. Atkinson*, 298 Or 1, 4, 688 P2d 832 (1984) (internal quotation marks omitted). Under the automobile exception,

> "police may search a lawfully stopped automobile without waiting to obtain a warrant if: (1) there is 'probable cause to believe that the lawfully stopped automobile contains contraband or crime evidence' and (2) exigency is present, because the automobile is mobile at the time." *State v. Herrin*, 323 Or 188, 193 n 1, 915 P2d 953 (1996) (quoting *State v. Brown*, 301 Or 268, 274-77, 721 P2d 1357 (1986)).

The state concedes that this court has repeatedly held that the automobile exception cannot apply after a vehicle is lawfully impounded because any exigency created by the vehicle's mobility has been extinguished. *See, e.g.*, *State v. Getzelman*, 178 Or App 591, 601, 39 P3d 195 (2002); *State v. Walker*, 173 Or App 46, 52, 20 P3d 834 (2001); *State v.*

---

[1] Defendant challenges only his conviction for possession of a controlled substance.

*Kruchek*, 156 Or App 617, 624, 969 P2d 386 (1998), *aff'd by an equally divided court* 331 Or 664, 20 P3d 180 (2001). We decline the state's invitation to reconsider the reasoning of those cases. Because defendant's vehicle already had been impounded when the box was opened, the automobile exception does not apply, and the trial court erred in concluding to the contrary.

■■ The trial court also relied in part on the Cornelius inventory ordinance in denying defendant's motion to suppress, but the state does not contend on appeal that any portion of that ordinance authorized the opening of the box or the unwrapping of the rag found inside. Instead, although the state concedes that it did not make this argument to the trial court, it asserts that, under the right-for-the-wrong-reason doctrine, we may affirm the trial court's denial of defendant's motion to suppress on the ground that the box was opened during a search incident to defendant's arrest. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). In *Outdoor Media Dimensions*, the Supreme Court explained that the doctrine has three predicates:

> "[Invoking the right for the wrong reason doctrine] requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." *Id.* at 659-60 (emphasis in original).

We need not determine whether the first two of the three *Outdoor Media Dimensions* predicates were satisfied because, for the reasons that follow, we conclude that the record is not materially the same one that might have been

developed had the state asserted the search-incident-to-arrest exception before the trial court. Therefore, we decline to address the state's new argument.

■■■■ A brief summary of the principles governing the automobile exception and the search-incident-to-arrest exception demonstrates that they have materially different elements. As noted, at trial, the state relied on the automobile exception to justify the warrantless search of defendant's truck. The elements necessary to establish the automobile exception are (1) a mobile vehicle, (2) which is lawfully stopped, and (3) in which police have probable cause to believe that they will find contraband or evidence of a crime. *Herrin*, 323 Or at 193-94 n 1. By contrast, to be authorized under the search-incident-to-arrest exception, a search must (1) occur pursuant to probable cause to arrest the suspect and (2) be reasonably related to the arrest in time, scope, and intensity. *State v. Crampton*, 176 Or App 62, 74, 31 P3d 430 (2001). If, in the course of inventorying an arrestee's personal property, the officer develops probable cause to believe that the arrestee has committed a crime other than the one for which he or she was arrested, the officer may conduct a reasonable search incident to the presumed arrest for that other crime. *State v. Lane*, 135 Or App 233, 239, 898 P2d 1358, *rev den* 322 Or 360 (1995). Depending on the totality of circumstances, a search incident to arrest for the purpose of discovering evidence related to a crime can extend to the opening of closed containers. *Crampton*, 176 Or App at 73 (citing *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982)). However, the incidence of arrest "does not justify an exploratory seizure of *everything* [in the arrestee's] immediate possession." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) (emphasis added; internal quotations omitted).

■■■■ In arguing that the record is sufficient to reach its new argument, the state points to a substantial amount of evidence relating to whether Schmid had probable cause to arrest defendant, which would—if sufficient—satisfy only one requirement for a search incident to arrest. As to the reasonableness of the search, the state argues that

> "the record establishes that the search at issue was reasonable in time, scope, and manner. That is true, because the

search occurred during the same inventory that revealed the syringes, and therefore occurred just a short time after the officers obtained probable cause to arrest defendant for [possession of a controlled substance]. Further, * * * context makes it clear that the grey metal box that was searched was found inside the vehicle, apparently in or near the front compartment of the vehicle. It is thus apparent that the scope of the officers' search was limited to areas and articles within defendant's immediate control." (Footnote omitted.)

However, the state does not contend that the record contains *direct evidence* concerning at least three important issues. The first is the amount of time that had elapsed between defendant's arrest—not the officer's development of probable cause as to a second crime—and the search of the metal box. In its current state, the record does not disclose that information. The search-incident-to-arrest doctrine is an exigency-based exception to the warrant requirement. *State v. Milligan*, 304 Or 659, 669, 748 P2d 130 (1988). Thus, proper analysis of the "time" component of the reasonableness requirement would call for further development of the record relating to the existence of, in effect, exigent circumstances at the time the box was opened. *See Kruchek*, 156 Or App at 625 (holding that record was insufficiently developed to find that exigency of arrest existed when impounded vehicle was searched).

Second, the record is insufficiently developed as to whether the "scope" of the search was reasonable, because the physical location of the metal box relative to the syringes is unclear from the record. Indeed, that uncertainty is apparent from the state's argument that "context makes it clear that the grey metal box * * * was found inside the vehicle, *apparently in or near the front compartment of the vehicle.*" (Emphasis added.)

Third, the record relating to the "intensity" of the search also is inadequately developed. Schmid testified that he believed he would find drugs because he found the package of unused syringes inside the truck. However, there was no evidence as to any other circumstances that may have indicated whether the decision to open that particular box

and to unwrap the rag inside constituted a reasonably intensive search—as opposed to impermissible exploration—of defendant's possessions. *Cf. Crampton*, 176 Or App at 74 (holding that search of closed container incident to arrest was justified in totality of circumstances, in part because the defendant had indicated that he might have additional weapons in the vehicle and, in part, because the containers were of a type in which the objects of the search were likely to be found).

In sum, no evidence or argument before the trial court focused on facts and circumstances bearing on the reasonableness of Schmid's search of the metal box.[2] Had the state raised the search-incident-to-arrest exception before the trial court, both parties might have created a materially different record with respect to those circumstances. Accordingly, we will not reach the state's proposed alternative basis for affirmance. *Outdoor Media Dimensions*, 331 Or at 659-60.[3]

Reversed and remanded.

---

[2] Moreover, given the fact that the trial court never addressed the state's search-incident-to-arrest argument, we cannot assume, as in *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), that the trial court implicitly resolved that critical factual issue in the state's favor. *See State v. Bailey*, 143 Or App 285, 296-97, 924 P2d 833 (1996) (reaching the same conclusion where the state raised search incident to arrest for the first time on appeal and the court's factual findings were ambivalent on a critical issue).

[3] *See also State v. Fuller*, 158 Or App 501, 976 P2d 1137 (1999); *Kruchek*, 156 Or App 617. Although *Fuller* and *Kruchek* both predated the Supreme Court's opinion in *Outdoor Media Dimensions*, our conclusion in this case is also consistent with our decisions in those cases. In each case, the state raised the "search incident to arrest" exception to the warrant requirement for the first time on appeal, and, in each case, we determined that the factual record was insufficiently developed to consider the issue. *Fuller*, 158 Or App at 507-08; *Kruchek*, 156 Or App at 624-25.