POWERS, J.
*385 Defendant appeals from a judgment of conviction for possession of methamphetamine, ORS 475.894(1), asserting that the trial court erred by denying his motion to suppress. Defendant argues that, after the officer who stopped him developed reasonable suspicion that he had committed the crime of driving while under the influence of intoxicants (DUII), the officer unlawfully extended *244 the stop by asking him whether he had alcohol or drugs in the car and by requesting consent to search his vehicle. As explained below, because there was a reasonable, circumstance-specific relationship between the officer's questions and the purpose of the stop, the trial court did not err in denying defendant's motion to suppress.
We review the denial of a motion to suppress for legal error, and we are bound by the trial court's findings of fact so long as they are supported by constitutionally sufficient evidence in the record. State v. Maciel-Figueroa , 361 Or. 163, 165-66, 389 P.3d 1121 (2017). Where the trial court did not make express findings and there is evidence in the record from which a fact could have been decided in more than one way, we will presume that the court decided the facts in a manner consistent with its ultimate conclusion. Id. at 166, 389 P.3d 1121 ; see also Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968). We describe the facts consistently with that standard.
Port of Portland Police Officer McKay stopped defendant after observing multiple traffic violations and, upon contact, noticed that he had a sweaty, "beet red" face, and very watery eyes. Based on defendant's appearance, that he had a "hard time answering simple questions," and "just seemed kind of like he wasn't sure what was going on," McKay believed that defendant was under the influence of "some type of intoxicant." McKay asked defendant if he had been drinking that day or taking any medications, and defendant replied that he had just woken up from napping in his car and that he works long hours. McKay then asked defendant if he had any alcohol or controlled substances with him or in the car, and defendant replied that he was "not sure." McKay then asked if defendant minded if he checked.
*386 Defendant "paused for a second, looked down, and said 'I'm not sure. I don't know what I have.' " McKay followed up by asking if defendant minded if he took a "quick look," and, without verbally responding, defendant picked up a jacket from the passenger seat and said, "I don't think I have anything." Under the jacket, McKay saw a clear glass pipe with white residue. McKay told defendant that "it looked like a meth pipe," to which defendant nodded affirmatively.
At that point, McKay read defendant his Miranda rights and then asked him if there were additional drugs in the car. Defendant replied that "there may be." McKay then asked defendant to exit the vehicle and placed him under arrest and in handcuffs. McKay searched defendant's car and found two toiletry cases that contained methamphetamine and associated paraphernalia on the floor behind the passenger seat. Defendant was cited for the traffic infractions and transported to jail for possession of methamphetamine.
Before trial, defendant filed a motion to suppress, arguing that McKay unlawfully extended the duration of the traffic stop when he asked defendant for consent to search his vehicle without reasonable suspicion, in violation of Article I, section 9, of the Oregon Constitution. The state responded that McKay had reasonable suspicion that defendant was driving under the influence of intoxicants, and, accordingly, the request to search defendant's car was constitutionally permissable.
After testimony from McKay and defendant, as well as the parties' arguments, the court found McKay credible and denied the suppression motion. Subsequently, defendant was convicted of possession of methamphetamine in a bench trial.
Article I, section 9, establishes the right of the people to be free from unreasonable searches or seizures. A stop is a "temporary restraint of a person's liberty for the purpose of criminal investigation" and is a type of seizure. State v. Rodgers/Kirkeby , 347 Or. 610, 621, 227 P.3d 695 (2010). Law enforcement officers have the authority to perform traffic stops based on reasonable suspicion of criminal activity or probable cause for noncriminal traffic infractions. Id. at 621-23, 227 P.3d 695. That authority to detain a motorist, however, dissipates *387 "when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed." Id. at 623, 227 P.3d 695. Any additional *245 questioning or further conduct by law enforcement beyond that conduct that is reasonably related to the traffic violation "must be justified on some basis other than the traffic violation." Id. (emphasis omitted).
If an officer's questions or "request for consent was 'reasonably related' to the purpose of the detention, then the request did not extend the stop in violation of Article I, section 9." State v. Pichardo , 360 Or. 754, 759, 388 P.3d 320 (2017) (citations omitted). As the Supreme Court has explained, "a question may be reasonably related to a stop even though the question is not supported by reasonable suspicion." Id. In that instance, the state must be able to show a " 'reasonable, circumstance-specific' relationship between the questions and the purpose of the stop." Id . (citing State v. Jimenez , 357 Or. 417, 429, 353 P.3d 1227 (2015) ).
On appeal, defendant concedes that McKay lawfully stopped defendant to investigate traffic violations and further acknowledges that McKay subsequently developed reasonable suspicion that defendant was driving under the influence of intoxicants. Accordingly, the narrow issue before us is whether McKay's questions involving possession of alcohol or drugs and McKay's request for consent to search defendant and his car were reasonably related to the DUII investigation.
Defendant remonstrates that McKay unlawfully extended the stop by asking him whether he possessed alcohol or drugs and requesting consent to search the vehicle because the questions were not related to either the traffic violations or the DUII investigation and were not supported by an objectively reasonable suspicion that defendant possessed a controlled substance. Defendant further contends that, because defendant's seizure became unlawful the moment that McKay inquired about possession of alcohol or drugs without justification, all evidence obtained as a result of that illegality must be suppressed. The state responds that McKay's questions involving possession and request *388 for consent to search defendant's vehicle were reasonably related to the DUII investigation because the questions sought to uncover evidence of that crime.[1] We agree with the state's argument.
Defendant challenges three questions that McKay asked, and we address each one in turn. First, defendant challenges McKay's question of whether defendant had any alcohol or controlled substances with him or in the car. We conclude that this question had a "reasonable, circumstance-specific" relationship to the investigation of the DUII. Although possession of alcohol or controlled substances is not an element that the state has to prove in a DUII case, possession of alcohol or a controlled substance certainly can be relevant evidence to prove that a driver has committed the crime of DUII. For instance, in the context of searches incident to DUII arrests, "we routinely have upheld searches of closed containers in cars incident to arrest for DUII where the containers are the type that reasonably could conceal evidence of alcohol * * * or drugs." State v. Washington , 265 Or. App. 532, 538, 335 P.3d 877 (2014) ; see also State v. Burgholzer , 185 Or. App. 254, 261, 59 P.3d 582 (2002) (concluding that the officer's search of a cigarette package in a search incident to arrest for driving under the influence of a controlled substance was permissible, because a "cigarette package was a place where evidence of that crime could have been concealed"); State v. Crampton , 176 Or. App. 62, 74, 31 P.3d 430 (2001) (holding that an officer could permissibly search a locked toolbox and "long cases" found in the car during search incident to arrest for driving under the influence of drugs and unlawful possession of firearms, because "the containers were the types of containers in which weapons or drugs were likely to be found"). The reasonable relationship test "is not a demanding one." Pichardo , 360 Or. at 762, 388 P.3d 320. Accordingly, we readily conclude that McKay's question to defendant about whether he had any alcohol or drugs in his vehicle is reasonably related to the DUII investigation because it is an inquiry aimed at uncovering evidence of the crime of DUII.
*246 *389 Next, we examine McKay's requests for consent together because they are qualitatively the same question, and we similarly conclude that they were reasonably related to the DUII investigation. When McKay asked defendant whether he had any alcohol or controlled substances in the car, defendant replied that he was "not sure." In response, McKay asked defendant if he would mind if McKay "checked." Defendant paused and then said, "I'm not sure. I don't know what I have." McKay then asked again if defendant would mind if he took a "quick look." McKay's requests for consent to search for alcohol or drugs directly followed his question of whether defendant had any alcohol or drugs in the vehicle and both were similarly directed at uncovering evidence of the crime of DUII. Accordingly, for the same reasons explained above, asking defendant for consent to search the vehicle for alcohol or drugs was reasonably related to the DUII investigation, and did not unlawfully extend the stop.
Defendant's reliance on State v. Miller , 267 Or. App. 382, 340 P.3d 740 (2014), for the proposition that an officer may not inquire about the possession of alcohol or drugs when investigating a DUII is misplaced. In Miller , after the defendant was stopped for a traffic violation, the officer developed reasonable suspicion that the defendant was driving under the influence of a controlled substance. Id. at 383-84, 340 P.3d 740. The officer also believed that the defendant possessed controlled substances in the vehicle. Id. at 385, 340 P.3d 740. The officer questioned the defendant about his use of drugs, and eventually called for another officer to bring a drug-detection dog to the scene. Id. at 386, 340 P.3d 740. The dog alerted to drugs in the vehicle. Id. The trial court denied the defendant's motion to suppress, and the defendant subsequently was convicted of multiple counts of unlawful delivery of heroin. Id. at 387, 340 P.3d 740.
On appeal, we concluded that the officer was justified in commencing an investigation into the defendant's "recent use of a controlled substance." Id. at 390, 340 P.3d 740 (emphasis omitted). The officers, however, did not have reasonable suspicion that the defendant presently was in possession of drugs, which was necessary to justify the deployment of the dog. Id. at 398, 340 P.3d 740. Accordingly, we concluded that the deployment of the dog unlawfully prolonged the stop. Id. at 400, 340 P.3d 740.
*390 In this case, defendant relies on Miller to support his argument that an inquiry about the presence of alcohol or drugs during a DUII investigation is not reasonably related to that investigation. Defendant's argument relies on isolated statements in Miller in which we stated that "the act of deploying the dog cannot be supported as 'reasonably related' to [the officer's] suspicion of DUII," and that "[a] drug-detection dog detects the presence of drugs, not whether a person is intoxicated." Id. at 392, 340 P.3d 740. When those statements are read in the context in which they were made, however, it becomes evident that those statements are not part of the holding of that case. The discrete legal question presented in Miller was whether the officer, under the circumstances of that case, had reasonable suspicion that there were drugs present in the vehicle to justify the deployment of the drug-detection dog. We explained that an officer's belief that a suspect was under the influence of a controlled substance was insufficient on its own to provide an objectively reasonable basis to conclude that a person presently possessed drugs. Id . at 393-95, 340 P.3d 740. As we explicitly stated, that is "a distinct question from whether present intoxication can support an objectively reasonable suspicion that a suspect previously possessed drugs, i.e. , immediately before consuming them. The reasonableness of that inference, however, is not at issue here." Id. at 394 n. 8, 340 P.3d 740. Indeed, in Miller , we clarified that, "The state does not separately argue that the dog sniff was justified as part of an investigation that was reasonably related to the crime of DUII. Accordingly, we express no opinion on that point." Id. at 393 n. 7, 340 P.3d 740 (citation omitted). Thus, we disagree with defendant's argument that Miller stands for the proposition that an officer's questions about the present possession of alcohol or drugs during an investigation for driving under *247 the influence of intoxicants cannot be reasonably related to a DUII investigation.[2] *391 In short, because the presence of alcohol or a controlled substance in a vehicle is relevant evidence of the crime of driving under the influence of intoxicants, McKay's questions regarding defendant's possession of alcohol and controlled substances were reasonably related to the DUII investigation. Accordingly, the trial court did not err in denying defendant's motion to suppress and, consequently, we affirm.
Affirmed.

The state does not argue that the questions were justified on an independent basis, namely, that McKay had reasonable suspicion that defendant possessed a controlled substance.

In State v. Rondeau , 295 Or. App. 769, 777, 436 P.3d 49 (2019), which was decided after briefing and argument in this case, we noted the "irreconcilable" contradiction between footnote 7 in Miller and some statements in the text of that opinion. We did not need to resolve that inconsistency in Rondeau , and take the opportunity to do so here. The contradictory statements in the text of Miller must be read in light of the footnote, and therefore, are dicta . Accordingly, we conclude that Miller did not express an opinion on whether "the dog sniff was justified as part of an investigation that was reasonably related to the crime of DUII." See Miller , 267 Or. App. at 393 n. 7, 340 P.3d 740.