Submitted August 31, 2011, affirmed June 13, 2012,
petition for review denied January 24, 2013 (353 Or 447)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOHN BRIAN JOHNSON,
*Defendant-Appellant.*

Lane County Circuit Court
200902347; A143312

280 P3d 1026

Peter Gartlan, Chief Defender, and Anne Fujita Munsey, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for unlawful possession of a destructive device, ORS 166.382. That statute defines the crime of unlawful possession of a destructive device to include possession of "[a]ny of the following devices with an explosive, incendiary or poison gas component: * * * [b]omb." ORS 166.382(1)(a)(A). Defendant assigns error to the trial court's denial of his motion for judgment of acquittal, asserting that there was insufficient evidence that the blasting cap that he possessed was a "bomb" under that statute. We conclude that the evidence was sufficient to establish that defendant possessed a "bomb" and, accordingly, affirm.[1]

The relevant facts are few and undisputed. While on routine patrol, Springfield Police Officer Johnson observed defendant behaving suspiciously inside a parked car. After an initial investigation, Johnson searched the car and found a small plastic box with the words "Kill U Self!" and "Twice" printed on it. Inside the box were two electrical blasting caps, which were still in their original commercial packaging, and an unrelated safety fuse. A short time later, Officer Martin, a bomb technician with the Eugene Police Department's bomb squad, arrived at the scene, and inspected and seized the items.

Defendant was charged with one count of unlawful possession of a destructive device, ORS 166.382, and one count of unlawful possession of an explosive, ORS 480.210. As to the unlawful possession of a destructive device charge, the state proceeded on the theory that the blasting cap was a "bomb" within the meaning of ORS 166.382(1)(a)(A). At trial, Martin, the state's expert witness, testified that a blasting cap is a detonator; in other words, "it is a small explosive device that's designed to detonate a larger explosive." Martin

---

[1] Defendant also assigns error to the court's denial of his motion in arrest of judgment on the unlawful possession of a destructive device charge, asserting that ORS 166.382 is unconstitutionally vague. *See State v. Maxwell*, 165 Or App 467, 473, 998 P2d 680 (2000), *rev den*, 334 Or 632 (2002) (noting that a defendant may challenge a criminal statute for vagueness through a motion in arrest of judgment). We reject that assignment of error without discussion.

described the blasting cap found in defendant's car as consisting of a two-inch-long aluminum tube approximately the size of a pencil in diameter; the aluminum tube contained explosive material and a bridge wire. Extending from the aluminum tube were two leg wires that were secured by a factory shunt. Martin explained that a shunt—"a piece of metal that's wrapped around the two leg wires"—prevents a blasting cap from detonating by blocking the electrical current that is required for detonation. A blasting cap may be intentionally detonated by removing the factory shunt and attaching a battery or blasting machine to the leg wires. Martin further testified that, if the shunt is removed, even if no battery or blasting machine is used, ambient radio frequency energy emitted into the air by cell phones, radios, or other sources may cause a blasting cap to unexpectedly detonate. According to Martin,

> "once you apply [electrical] current to the leg wires, that current is going to heat up that bridge wire, and the bridge wire is immediately going to ignite, causing the high explosive inside * * * to blow up violently. Just boom, it's going to blow up. And when you have an explosion like that, it's going to go 360 degrees. So if you take your two-inch * * * cylinder, [that is] made out of aluminum, all those little pieces of aluminum are going to come flying out."

After the state rested its case, defendant moved for a judgment of acquittal on the unlawful possession of a destructive device charge, arguing that the state had failed to establish, in accordance with its theory at trial, that the blasting cap was a "bomb" within the meaning of ORS 166.382(1)(a)(A). The trial court denied the motion, and the jury returned guilty verdicts on both counts. The court merged those guilty verdicts to produce a single conviction for unlawful possession of a destructive device.

On appeal, defendant reiterates his argument before the trial court. Defendant asserts, among other things, that the blasting cap cannot constitute a "bomb" because it was shunted and in its commercial packaging and, therefore, temporarily disabled. The state responds that a blasting cap does not have to be capable of detonating in its exact condition when discovered in order to constitute a "bomb."

We review a trial court's denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the state proved all the essential elements of the offense beyond a reasonable doubt. *State v. Cunningham,* 320 Or 47, 63, 880 P2d 431 (1994), *cert den,* 514 US 1005 (1995). Whether a blasting cap may constitute a "bomb" within the meaning of ORS 166.382(1)(a)(A) is a question of statutory interpretation. When construing a statute, we examine the text of the statute in context, along with any relevant legislative history, to discern the legislature's intent. *State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009).

ORS 166.382 provides, in relevant part:

"(1)   A person commits the crime of unlawful possession of a destructive device if the person possesses:

"(a)   Any of the following devices with an explosive, incendiary or poison gas component:

"(A)   Bomb;

"(B)   Grenade;

"(C)   Rocket having a propellant charge of more than four ounces;

"(D)   Missile having an explosive or incendiary charge of more than one-quarter ounce; or

"(E)   Mine; or

"(b)   Any combination of parts either designed or intended for use in converting any device into any destructive device described in paragraph (a) of this subsection and from which a destructive device may be readily assembled."

We begin with a textual and contextual analysis of the statute. ORS 166.382 provides two means by which a person may commit the crime of unlawful possession of a destructive device. First, under ORS 166.382(1)(a), a person unlawfully possesses a destructive device if they possess one of the enumerated devices in that subsection and that device contains, in addition to other components, either an explosive, an incendiary, or a poison gas component. *State v. Luers,* 211 Or App 34, 53-55, 153 P3d 688, *adh'd to as modified on*

*recons*, 213 Or App 389, 160 P3d 1013 (2007); *see also Webster's Third New Int'l Dictionary* 466 (unabridged ed 2002) (defining the term "component" as "a constituent part"). Second, under ORS 166.382(1)(b), a person unlawfully possesses a destructive device if the person possesses "[a]ny combination of parts either designed or intended for use in converting any device into any destructive device described in [ORS 166.382(1)(a)] and *from which a destructive device may be readily assembled.*" (Emphasis added.)

The text of ORS 166.382(1)(b) provides helpful context regarding the nature of a "destructive device." That text prohibits possessing parts that may be "readily assembled" into a "destructive device" and that are "either designed or intended for use." *See Webster's* at 131 (defining the term "assemble" as "to fit together various parts * * * as to make into an operative whole"). It is reasonable to conclude that the parallel provision of ORS 166.382(1)(a) prohibits possession of an *assembled* destructive device that is also "either designed or intended for use." Accordingly, in order to constitute a "destructive device" under ORS 166.382(1)(a), a device must be one integrated whole that includes (1) either an explosive, incendiary, or poison gas component and (2) all of the physical components required for it to function as one of the enumerated devices.

Whether the device at issue here—the blasting cap—contained all of the physical components required for it to function as a "bomb" under ORS 166.382(1)(a)(A) requires us to determine the meaning of that term. ORS 166.382 does not define the term "bomb." However, we have previously stated that, where the device at issue contains an explosive component, the plain meaning of the term "bomb" is "a device carrying an explosive charge fused to detonate under certain conditions." *State ex rel Juv. Dept. v. Garrett*, 193 Or App 629, 633, 91 P3d 830 (2004) (citing *Webster's* at 249); *see also Luers*, 211 Or App at 54 (holding that, under the plain text of ORS 166.382(1)(a), a device without an explosive charge may still constitute a "bomb" if it has an incendiary or poison gas component).

Here, the blasting cap that defendant possessed contained, in one integrated whole, all of the physical parts required for it to function as a "bomb" with an explosive component. As the state's expert testified, the blasting cap contained explosive material powerful enough to cause the blasting cap to "blow up violently" and send pieces of aluminum "flying out." Moreover, it contained the additional physical components required for detonation by electromagnetic radiation—the leg wires that operate as a fusing component and the bridge wire. Nothing more needed to be *added* to the device to make it work as a "bomb."

Defendant's contrary argument—that the plain meaning of the term "bomb" excludes a device that is temporarily disabled, *i.e.*, that something needs to be *removed* from the device to make it work—is unavailing. There is nothing in the text or legislative history of ORS 166.382(1)(a) to suggest that a device is not a "bomb" until it is removed from a container or until a safety component is disabled. Even when a device is disabled, it may still be "either designed or intended for use" under ORS 166.382(1). The removal of a safety encumbrance from a bomb does not suddenly qualify the device as a "bomb" any more than the removal of a firing pin from a grenade qualifies it as a "grenade." Rather, as noted, the plain meaning of the term "bomb" merely requires that a device be capable of detonating "under certain conditions." The blasting cap was fully functional except that it was shunted and still in its commercial packaging. Had defendant, or anyone else, unwrapped the blasting cap from its packaging and removed the shunt, electrical current in the air could have caused the blasting cap to detonate. Accordingly, the blasting cap was capable of detonating "under certain conditions." *See Garrett*, 193 Or App at 633 (noting that an unlit modified firework was a "bomb" under ORS 166.382(1)(a)(A) because it was "capable of exploding and was fused to detonate *when lit*" (emphasis added)). We also reject without further discussion defendant's claim that, because the blasting cap could be a component of a "bomb," it could never be a "bomb" itself. Again, the text of ORS 166.382(1)(a) contains no such exclusion. Accordingly, the

state presented sufficient evidence that the blasting cap possessed by defendant was a "bomb" within the meaning of ORS 166.382(1)(a)(A).[2]

Affirmed.

---

[2] Of course, not all possessions of a blasting cap are unlawful. Under ORS 166.382(3)(a), unlawful possession of a destructive device is excused for a person "who possess[es] explosives as provided in ORS 480.200 to 480.290." Those statutes prescribe methods to possess an explosive by certificate, license, or permit.